UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PALL CORPORATION,<br><br>                              Plaintiff,<br><br>- against -<br><br>CLEANSPACE MODULAR, LLC,<br><br>                              Defendant. | Civil Action No.: _____<br><br>**COMPLAINT**<br><br>JURY TRIAL DEMANDED |

Plaintiff Pall Corporation ("Pall"), by and through its attorneys, Nixon Peabody LLP, as and for its Complaint against Defendant Cleanspace Modular, LLC ("Cleanspace") (collectively, the "Parties"), respectfully alleges as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Pall is a corporation organized and existing under the laws of the State of New York, with its principal place of business located at 25 Harbor Park Drive, Port Washington, New York, 11050.

2. Upon information and belief, Cleanspace is a foreign limited liability company organized and existing under the laws of the State of Pennsylvania, with a principal place of business at 607 Airport Boulevard, Doylestown, Pennsylvania, 18902.

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 for jurisdiction over civil actions where the matter in controversy exceeds the sum and value of $75,000 and is between citizens of different states.

4. Moreover, the Parties previously consented to the jurisdiction of this Court, specifically Section 16.16, Jurisdiction, of the Master Services Agreement, which states:

> The Parties hereby unconditionally and irrevocably submit to (and waive any objection on the grounds of inconvenient forum or otherwise) the jurisdiction of the Supreme Court of the State of New York, County of Nassau or the United

> States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction to adjudicate and determine any suit, action or proceeding regarding or relating to this Agreement. A judgment, order or decision of those courts in respect of any such claim or dispute shall be conclusive and may be recognized and enforced by any courts of any state, country or other jurisdiction.

A true and accurate copy of the Master Services Agreement is attached hereto as **Exhibit A**.

5. This Court, therefore, has jurisdiction over the instant action because the Parties have agreed to submit to the jurisdiction of this Court.

## FACTUAL BACKGROUND

**A.   Timonium Contract**

6. On or about December 17, 2020, the Parties entered into the Master Services Agreement. See Exhibit A.

7. Section 1.2, Statements of Work, of the Master Services Agreement specifies the services that Cleanspace would provide to Pall by reference to a Statement of Work attached to the Master Service Agreement. See id.

8. On or about May 4, 2021, Pall and Cleanspace executed the Statements of Work.

9. A true and accurate copy of the Statements of Work is attached hereto as **Exhibit B**.

10. The Master Services Agreement and Statements of Work (collectively, the "Timonium Contract") constitutes a valid and binding contract between the Parties.

11. The Timonium Contract required Cleanspace to design, procure materials for, and construct "one clean non-classified cleanroom (CNC) and one ISO7 certified cleanroom within Pall Timonium – Plant 2." Exhibit B, at 1.

12. The Timonium Contract required Cleanspace to design, procure materials for, and construct two cleanrooms in accordance with Pall's guidelines, specifications, and requirements, specifically the temperatures of the two cleanrooms.[1]

13. The Timonium Contract required Pall to pay Cleanspace in the amount of Two Million, Six Hundred and Fifty Thousand Dollars ($2,650,000.00).

14. The Timonium Contract contemplated an original completion deadline of May 7, 2021. See Exhibit B, Appendix 1.

15. Cleanspace failed to construct the two cleanrooms, as required by the Timonium Contract.

16. Cleanspace's failure to construct the two cleanrooms arose from Cleanspace's poor project management, Cleanspace's failure to obtain the proper permits required for the cleanrooms, and Cleanspace's failure to pay its vendors.

17. Moreover, the faulty heating, ventilation, and air condition ("HVAC") systems, installed by Cleanspace in both cleanrooms, interfered with both cleanrooms' respective temperature regulation.

18. Indeed, both cleanrooms were unable to maintain temperatures under seventy degrees Fahrenheit.

19. For example, during the winter of 2021, the average temperatures of both cleanrooms remained at a temperature of around eighty degrees Fahrenheit.

20. Pall attempted to mitigate the respective damages for both inoperable cleanrooms.

21. The total amount required to mitigate the respective damages for both inoperable cleanrooms has exceeded $420,000.00.

---

[1] Pall required one cleanroom to reside at a temperature of 60 degrees Fahrenheit +/-4 degrees.
Pall required the second cleanroom to reside at a temperature of 65 degrees Fahrenheit +/-8 degrees.

B.    **The Cleanspace Credit Card Charges**

22.    Upon information and belief, after the Parties entered into the Timonium Contract, Cleanspace placed numerous charges wholly unrelated to the Timonium Contract on Pall's credit card.

23.    Upon information and belief, during May 2021, Cleanspace charged Pall's credit card numerous times.

24.    Pall was able to reconcile these charges placed during May 2021.

25.    On September 22, 2021, however, Cleanspace charged Pall's credit card numerous times, in the total amount of $1,045,000 (the "Cleanspace Credit Card Charges").

26.    Pall cannot reconcile the Cleanspace Credit Card Charges with any valid charges related to the Timonium Contract.

C.    **The Erroneous Reimbursement Paid to Cleanspace**

27.    On or around November 24, 2021, Cleanspace informed Pall that it had received invoices from EquipmentShare, a third-party vendor that provided chilling equipment which was being used to construct the two cleanrooms.

28.    The invoices from EquipmentShare totaled $79,734.28 (the "Invoices").

29.    On December 9, 2021, Pall notified Cleanspace that Pall would pay the Invoices directly to EquipmentShare.

30.    Notwithstanding this notice, Cleanspace submitted the Invoices to Pall.

31.    During January of 2022, Pall paid Cleanspace for the Invoices in the amount of $79,734.28 (the "Erroneous Reimbursement").

32.    Additionally, EquipmentShare submitted the same Invoices to Pall.

33.    Pall paid EquipmentShare for the Invoices in the amount of $79,734.28.

34. In February of 2022, after Pall realized that it had paid the Erroneous Reimbursement to Cleanspace, Pall requested Cleanspace return the Erroneous Reimbursement.

35. In response, Cleanspace claimed that it had transferred the Erroneous Reimbursement to EquipmentShare.

36. However, upon information and belief, EquipmentShare received no payment from Cleanspace in the amount of $79,734.28.

37. Pall requested return of the Erroneous Reimbursement for approximately ten months.

38. Cleanspace, however, refused to return the Erroneous Reimbursement to Pall, improperly retaining $79,734.28.

39. From December 22, 2022 and December 28, 2022, Pall engaged in multiple email and phone conversations with Cleanspace to discuss the Cleanspace Credit Card Charges and the Erroneous Reimbursement (the "Improper Cleanspace Charges"), which totaled $1,124,734.20.

40. When asked about the Improper Cleanspace Charges, Cleanspace claimed that the Improper Cleanspace Charges resulted from valid project costs associated with the Timonium Contract.

D. **Termination of the Timonium Contract**

41. On or around May 21, 2022, Pall sent Cleanspace a Notice of Breach and Reservation of Rights regarding Cleanspace's failure to design, procure, and construct the two cleanrooms, as required by the Timonium Contract.

42. A true and accurate copy of this Notice of Breach and Reservation of Rights is attached hereto as **Exhibit C**.

43. Upon information and belief, on or around May 23, 2022, Cleanspace acknowledged receipt of Pall's Notice of Breach and Reservation of Rights.

## AS AND FOR A FIRST CLAIM FOR
## NEGLIGENT MISREPRESENTATION

44. Pall repeats and incorporates by reference the allegations contained in paragraphs 1 through 43 of this Complaint.

45. Cleanspace represented to Pall that it was able to design, procure materials for, and construct "one clean non-classified cleanroom (CNC) and one ISO7 certified cleanroom within Pall Timonium – Plant 2" pursuant to Pall's guidelines, specifications, and requirements. Exhibit B, at 1.

46. Cleanspace was aware that Pall would rely upon its misrepresentations to enter into and execute the Timonium Contract.

47. Cleanspace intended for Pall to rely upon Cleanspace's misrepresentations.

48. Pall reasonably relied on Cleanspace's misrepresentations when entering into and executing the Timonium Contract.

49. As a result of Cleanspace's misrepresentations, Pall suffered damages in an amount to be proven at trial, but in no event less than $2,650,000.00.

## AS AND FOR A SECOND CLAIM FOR
## BREACH OF CONTRACT

50. Pall repeats and incorporates by reference the allegations contained in paragraphs 1 through 49 of this Complaint.

51. The Timonium Contract constitutes a valid and binding contract between the Parties.

52. Section 3.3 of the Master Services Agreement states:

>3.3 In the event that any of the Services fail to meet the requirements of the Contract Documents (including the warranties set forth herein), Pall shall have the right to, at its sole discretion:
>
>3.3.1 require Provider to remedy, at its own expense, any defects, errors or omissions that may arise in the Services and any work related thereto;
>
>3.3.2 require replacement services within a period of time specified by Pall at Provider's cost; or
>
>3.3.3 require that Provider refund the full amount paid by Pall hereunder within thirty (30) days of Pall's request for refund, and at Pall's option, terminate this Agreement.

53. The Timonium Contract was in full force and effect at the time of Cleanspace's faulty design, procurement of materials, and construction of the two cleanrooms.

54. Pall has duly performed its contractual obligations to Cleanspace, pursuant to the terms of the Timonium Contract.

55. Cleanspace, however, breached the Timonium Contract by failing to perform its obligations thereunder by failing to construct two cleanrooms pursuant to Pall's guidelines, specifications, and requirements.

56. Further, Cleanspace's breach of the Timonium Contract has caused Pall's failure to meet certain manufacturing commitments, resulting in lost revenue and damages.

57. Moreover, Cleanspace's breach of the Timonium Contract has resulted in damages to Pall, including but not limited to, mitigation costs to operate the cleanrooms.

58. Because of Cleanspace's breach of the Timonium Contract, Pall has sustained damages arising from Pall's need to remedy the defective cleanrooms, including but not limited to, actual, compensatory, and consequential damages, in an amount to be determined at trial but in no event less than $3,070,000.00.

## AS AND FOR A THIRD CLAIM FOR
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

59.     Pall repeats and incorporates by reference the allegations contained in paragraphs 1 through 58 of this Complaint.

60.     Pall and Cleanspace were Parties to the Timonium Contract, the terms of which implied a covenant of good faith and fair dealing.

61.     Cleanspace executed the Timonium Contract with no intent to comply with any of the terms thereof, as evidenced by its refusal to satisfy its contractual obligations under the Timonium Contract, specifically the design, procurement of materials, and construction of two cleanrooms.

62.     Cleanspace failed to exercise good faith and to deal fairly with Pall in fulfilling the terms and promises contemplated by the Timonium Contract and, instead, exercised bad faith and actions designed to damage Pall.

63.     Cleanspace's deliberate conduct resulted in simultaneous financial gain to Cleanspace and deprivation of any benefit to Pall.

64.     Thus, Cleanspace has breached the covenant of good faith and fair dealing in the Timonium Contract.

## AS AND FOR A FOURTH CLAIM FOR
## UNJUST ENRICHMENT

65.     Pall repeats and incorporates by reference the allegations contained in paragraphs 1 through 64 of this Complaint.

66.     Cleanspace placed charges on Pall's credit card totaling $1,045,000.

67.     Pall paid Cleanspace the Erroneous Reimbursement in the amount of $79,734.28.

68.     Pall, however, received no benefit for the Pall Credit Card Charges or the Erroneous Reimbursement.

69. As a result, Cleanspace was enriched at Pall's expense, and it would be against equity and good conscience to allow Cleanspace to retain the funds transferred to them by Pall.

70. As a result of the foregoing, Pall is entitled to damages in an amount to be proven at trial, but in no event less than $1,124.734.28.

## PRAYER FOR RELIEF

**WHEREFORE**, Pall requests that this Court:

1. Enter judgment against Cleanspace for the above causes of action,

2. Award Pall its damages in an amount to be determined, together with interest, court costs and attorneys' fees, expenses of litigation, and disbursements from the date of tender to the present,

3. Grant such other relief as it just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure Rule 38, Pall demands a trial by jury on all issues triable by a jury as a matter of right.

Dated: March 10, 2023
New York, New York

**NIXON PEABODY LLP**

By: /s/ Joseph J. Ortego
       Joseph J. Ortego

275 Broadhollow Road Suite 300
Melville, NY, 11747
Telephone: (516) 832-7500
Facsimile: (516) 832-7555
jortego@nixonpeabody.com

*Attorneys for Plaintiff*