# EXHIBIT A

# MASTER SERVICES AGREEMENT

This Master Services Agreement (this "<u>Agreement</u>"), dated as of December 15th, 2020 (the "<u>Effective Date</u>") by and between **Pall Corporation**, a New York corporation having its principal place of business at 25 Harbor Park Drive, Port Washington, NY, USA 11050 ("<u>Pall</u>") and **Cleanspace Modular, LLC**, a Pennsylvania cleanroom design and construction firm**,** having its principal place of business at  607 Airport Road, Doylestown PA, 18902 ("<u>Provider</u>"). Pall and Provider are collectively referred to herein as the "<u>Parties</u>" and individually as a "<u>Party</u>".

## RECITALS:

A.      Pall desires to engage Provider to perform certain services and Provider desires to perform such services for Pall; and

B.      As a condition to permitting the Provider to have access to Pall's (and/or its customers') information, properties and/or facilities and to provide services to Pall, Pall has required Provider to execute this Agreement.

NOW, THEREFORE, in consideration of the foregoing and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, the parties hereto agree as follows:

1.      <u>Services</u>.

1.1.    <u>Provision of Services</u>.   Subject to the terms and conditions of this Agreement, Provider and Pall hereby agree that Provider shall provide to Pall the services set forth in the separate statements of work agreed upon by the parties, incorporated herein by reference and attached hereto (the "<u>Services</u>").

1.2.    <u>Statements of Work</u>.  Services will be described in a statement of work substantially in the form attached hereto as Exhibit A (each a "<u>Statement of Work</u>" or "<u>SOW</u>").  The SOW shall specify the Services, applicable fees, scope of work, location and/or appropriate project timelines, as well as any terms and conditions, requirements, considerations, or objectives which differ from or add to the general provisions of this Agreement.   Once agreed, each Statement of Work must be signed by authorized representatives of both parties and then attached to this Agreement.

1.3.    <u>Changes to Statements of Work</u>.  If a party wishes to change a Statement of Work, and both parties agree, the change will be documented in writing by a change order signed by authorized representatives of both parties (each, a "<u>Change Order</u>").  The Change Order must describe the change, the impact that the change may have on the Statement of Work, the estimated resources and time required to implement the change and any change in prices, if applicable.

1.4.    <u>Project Management</u>.  Pall and Provider will each designate a coordinator who is experienced to provide the information and support necessary to the other party

for the performance of this Agreement.  The parties' respective "Contact Persons" shall be identified in the applicable Statement of Work.  The Contact Persons shall be the primary points of contact for inquiries and requests.  Each such coordinator shall provide the other with such information and assistance as may be reasonably requested by the other from time to time for the purpose of the performance of this Agreement.

      1.5.    Affiliates.  Pall shall be able to designate (by delivering written notice to Supplier) Affiliates (as defined herein) who shall be able to benefit from the same pricing and other terms under this Agreement as Pall, but only to the extent that (i) such other purchasers agree to be bound by the terms of this Agreement, and (ii) Pall remains liable for the obligations of such Affiliates hereunder.  As used herein, the term "Affiliate" means, with respect to a party to this Agreement, any corporation or other legal entity that controls, is controlled by, or is under common control with such party.  For purposes of this definition, "control" means the ownership, directly or indirectly, of more than 50% of the outstanding voting securities of a corporation or entity, or the right to receive 50% or more of the profits or earnings of an entity, or the right to vote for or appoint a majority of the board of directors or other governing body of such entity, or if it possesses, directly or indirectly, the power to direct or cause the direction of the management and policies of such entity.

2.    Term; Termination.

      2.1    Term.  The term of this Agreement shall commence on the Effective Date and unless otherwise terminated in accordance with the provisions hereof, shall continue for a period of 3 years (the "Term").  The term for completion of specific Services shall be as set forth in the applicable Statement of Work. Extensions of the Term will be subject to mutual written agreement of the Parties.

      2.2    Termination.  Pall may terminate this Agreement or any Statement of Work upon thirty (30) days prior written notice to Provider.  Either party may terminate this Agreement in the event of an uncured material breach caused by the other party.  Material breaches shall include failure to pay invoices when due (other than Disputed Amounts), and failure to perform any specific obligation required by this Agreement. The non-breaching party shall provide the other with written notice of the breach.  The breaching party shall have thirty (30) days within which to cure the breach; otherwise, the non-breaching party shall have the right to terminate upon written notice.

      2.3    Automatic Termination.  In addition to all other rights or remedies provided for in this Agreement or by law or in equity, this Agreement will automatically terminate in the event: (a) a Party makes a general assignment for the benefit of creditors, (b) a Party admits in writing its inability to pay debts as they mature, (c) a trustee, custodian or receiver is appointed by any court with respect to a Party or any substantial part of such Party's assets, or (d) an action is taken by or against a Party under any bankruptcy or insolvency laws or laws relating to the relief of debtors, including without limitation, the United States Bankruptcy Code and such action is not dismissed within 60 days of commencement of the action.

2.4     <u>Effect of Termination</u>.  The expiration, non-renewal or termination of this Agreement shall not terminate any SOW, and the terms of this Agreement shall remain effective as to any such SOW, until that SOW has been completed or has terminated. The notification by either Party of its intent to terminate this Agreement and/or the expiration of this Agreement, does not relieve either Party of any obligations which have accrued under the terms and conditions of this Agreement, inclusive of those terms and conditions which extend beyond the date of termination.

3.     <u>Representations and Warranties</u>

3.1     Provider acknowledges that Pall is at all times relying on Provider's knowledge and skill and on Provider's representations and warranties set forth herein.

3.2     Provider hereby represents, warrants, and covenants that:

3.2.1     The Services provided by Provider shall comply with and be performed in accordance with all foreign and United States federal, state, and local codes, laws, statutes, orders, regulations, standards, ordinances, and permits applicable to the Services ("<u>Applicable Laws</u>").

3.2.2     It owns or controls the necessary rights in order to perform the Services and the Services and all work performed in connection with the Services will not infringe any U.S. or applicable foreign patent claim or other intellectual property rights of any third party.

3.2.3     All documents and all information submitted by Provider hereunder in support of any costs or expenses shall constitute a true, accurate and complete description of the Services, activities and transactions to which they pertain.

3.2.4     The execution and delivery of this Agreement by Provider along with any applicable SOWs, and the consummation of all transactions contemplated hereby have been duly authorized by any requisite corporate action, the undersigned representative or officer has the full authority to enter into this Agreement on behalf of Provider and this Agreement, when executed and delivered, will constitute the valid and legally binding obligations of Provider, enforceable against Provider in accordance with its terms.

3.2.5     The execution and delivery of this Agreement by Provider does not, and the consummation of the transactions contemplated hereby and compliance with the provisions hereof will not, conflict or interfere with, result in any violation of, constitute a default (with or without notice or lapse of time, or both) under any organizational documents or material agreements to which Provider is a party or by which it is bound.

3.2.6     All work and Services performed in connection with or related to the Contract Documents (as defined herein) shall be performed by appropriately

qualified and trained personnel, with due care and diligence and to such high standard of quality as is reasonable. If, at any time, Pall objects to any Provider employee performing Services, and if Pall so requests, Provider shall withdraw such persons from the provision of the Services. Provider shall replace any such withdrawn person within a reasonable period so as to ensure that the Services remain uninterrupted and unaffected. Provider may not replace any critical personnel or project managers without Pall's consent, and in no event shall Pall be responsible for any costs associated with the transition of the work to a new employee or agent.

3.3    In the event that any of the Services fail to meet the requirements of the Contract Documents (including the warranties set forth herein), Pall shall have the right to, at its sole discretion:

    3.3.1    require Provider to remedy, at its own expense, any defects, errors or omissions that may arise in the Services and any work related thereto;

    3.3.2    require replacement services within a period of time specified by Pall at Provider's cost; or

    3.3.3    require that Provider refund the full amount paid by Pall hereunder within thirty (30) days of Pall's request for refund, and at Pall's option, terminate this Agreement.

4.    <u>Location</u>.

The Services will be performed at the location(s) identified in the applicable SOW(s).

5.    <u>Compensation</u>.

5.1.    <u>Fees</u>.  Pall agrees to pay Provider in the amounts, at the rates, and on the terms set forth in the relevant Statement of Work.

5.2.    <u>Invoices</u>.  Provider will deliver to Pall's Accounting Department an invoice at the end of each month, in form reasonably satisfactory to Pall, showing the number of hours of Services performed each day during the month and the aggregate fees due with respect to the Services performed under this Agreement during that month. Pall shall pay the entire amount of all invoices (excluding only Disputed Amounts) at terms agreed within each SOW attached to this Agreement.  As used herein, "<u>Disputed Amounts</u>" shall mean invoice amounts that are subject to a bona fide dispute raised by Pall in writing.

5.3.    <u>Records</u>.  Provider shall, throughout the term of this Agreement and for a period of 7 years after its expiration or termination, keep up-to-date records with respect to all work performed hereunder including, but not limited to, documentation of all expenditures and purchases made, time incurred and personnel used in connection with the Services in accordance with standard accounting and record keeping practices.  In

order to assure the maintenance of said records and to permit Pall to assure that the Services have been performed as provided in this Agreement and to confirm Provider billing where appropriate, Provider shall throughout the term of this Agreement and for a period of 7 years after its expiration or termination permit Pall or its agent to examine such records one time each year at such reasonable time or times as Pall and Provider may determine within Provider's normal business hours.  Pall shall bear all expense of such audit, unless any such audit reveals amounts owed to Pall in which case Provider shall promptly submit such amounts to Pall and provided that the discrepancy is greater than 3% of the aggregate amount total, shall reimburse Pall for the costs of such audit.

6.    Reimbursement of Expenses.

Pall will reimburse Provider for all Pall pre-authorized and necessary expenses incurred by Provider's employees in connection with the Services under this Agreement. Reimbursement of expenses will be contingent on the incurrence of such expenses having been previously approved by Pall and shall be made on the basis of itemized statements submitted by Provider to Pall, including, whenever possible, actual bills, receipts, or other evidence of expenditures not more frequently than a monthly basis.  All travel will be in compliance with Pall's business travel policy including air transportation via economy class.  Pall will provide local hotel accommodations, at Pall's option.

7.    Independent Contractor.

Provider will furnish its services as an independent contractor and Provider's employees, agents and representatives will not be considered employees of Pall or of any company affiliated with or of any customer of Pall.  Nothing contained or implied in this Agreement shall be construed so as to create the relationship of employer and employee, partnership, principal and agent or joint venture partner as between the parties or between Pall and Provider's employees, agents or representatives.  Provider shall be solely responsible for any compensation, benefits or other payments owed to or amounts required to be withheld with respect to its employees, agents or representatives performing Services hereunder.  Provider agrees that Pall will make no deductions from any compensation paid to Provider, and Provider shall have full and exclusive liability for, the payment of any taxes, withholding, FICA, SSI, and other similar items (both employee and employer portions) and/or contributions for unemployment insurance, workers' compensation or any other employment-related costs or obligations, related to the provision of the Services. Provider shall defend, indemnify and hold Pall harmless from any and all claims, losses, damages or expenses incurred by Pall relating thereto. Provider and its employees, agents and representatives have no power or authority to act for, represent, or bind Pall or any company affiliated with Pall in any manner without Pall's prior written consent.  If Pall or any of its affiliated companies is required to pay or withhold any taxes or make any other payment with respect to fees payable to Provider, Provider will reimburse Pall in full for taxes paid, and permit Pall to make deductions for taxes required to be withheld from any sum due by Pall.

8.    <u>Indemnification</u>.

Provider agrees to defend, indemnify and hold harmless Pall and its subsidiaries and affiliates, and each of their respective officers, directors, employees, agents, consultants and insurers (collectively referred to herein as "<u>Pall Indemnified Parties</u>") from and against any and all liabilities, obligations, damages, penalties, actions, judgments, suits, costs, claims, losses, expenses (including reasonable attorney's fees) or disbursements, of any kind and nature whatsoever, which may be imposed upon, incurred by or asserted against any Pall Indemnified Party in any way relating to or arising out of:

8.1    The performance by Provider or its officers, directors, employees, agents, consultants, subcontractors or their respective officers, directors, employees, agents, consultants or subcontractors ("<u>Provider's Personnel</u>") of any work or Services to, for or on behalf of Pall;

8.2    The use by Provider or Provider's Personnel of Pall's (or its customers') equipment, tools, facilities or property; and

8.3    Breach by the Provider or any of Provider's Personnel of any provision of this Agreement, including without limitation Section 12.

In addition to the indemnification provisions set forth above, Provider further agrees to indemnify Pall for all reasonable attorney's fees incurred in connection with any matter which is covered by Provider's indemnification obligations under this Agreement or any of the Contract Documents or in enforcing this Agreement or the Contract Documents against Provider, including attorney's fees incurred in any action brought against Provider to recover attorney's fees, costs, expenses and interest pursuant to this Agreement.

9.    <u>Insurance</u>.

9.1.    For so long as Provider or Provider's Personnel shall be providing Services to Pall and for at least 2 years following the termination or expiration of this Agreement or any SOW, Provider shall carry, at its own expense, such insurance (including professional liability insurance) as is normally carried by companies performing substantially similar services as Provider and as shall be reasonably required by Pall (or, to the extent Provider shall be performing services at or for Pall's customers, such customers, including, but not limited to, (i) Commercial General & Products Liability written on ISO occurrence based form) with a bodily injury and property damage combined single limit in the amount of $1,000,000 per occurrence (or such higher amounts as may be required in order to obtain the umbrella liability coverage described below), and which names Pall Corporation as an additional insured with respect to liability arising out of the Provider's ongoing operations for Pall (Endorsement ISO CGL Form CC 2010 required and attach to the certificate of insurance), (ii) Commercial Umbrella Liability in the amount of $2,000,000 per occurrence, naming  Pall Corporation as an additional insured with respect to liability arising out of the Provider's ongoing operations for Pall, (iii) Statutory Worker's Compensation in state(s) of

operation and Employer's Liability in the amount of $1,000,000, (iv) Commercial Automobile Liability insurance covering owned, non-owned and hired vehicles with a bodily injury and property damage combined single limit in the amount of $1,000,000 per occurrence, and naming Pall Corporation as an additional insured with respect to liability arising out of the Provider's ongoing operations for Pall, (v) Fidelity/Crime Insurance (third party extension endorsement required and attach to the certificate of insurance) for Providers handling payroll or other activities requiring handling of valuable property, and (vi) Professional Liability (E&O) insurance required for Providers providing professional services (vii) Limited Short-Term Pollution Liability (required for Contractors whose performance presents a risk of such exposure), and (ix) Broad Form Property Insurance (including "Builders Risk") for the value of property under construction and naming Pall Corporation as loss payee and additional insured (endorsement required and attach to the certificate of insurance)].  Each of the above mentioned policies shall contain waivers of the insurer's subrogation rights against Pall (endorsement required and attach to the certificate of insurance).  At or prior to the date hereof, Provider shall deliver to Pall a current certificate of insurance and endorsements reflecting the referenced coverages, in a form and substance satisfactory to Pall, acknowledging that Pall Corporation has been named as an additional insured on all referenced policies with respect to liability arising out of the Provider's ongoing operations for Pall, and no policy will be cancelled or materially changed without at least 30 days prior written notice to Pall Corporation.

9.2.    Provider agrees to waive any right of contribution or indemnity from Pall in any action brought by Pall or a Pall employee against Provider or Provider's Personnel for personal injury, negligence or any other claim arising out of the performance by Provider or Provider's Personnel of any Services for or on behalf of Pall.  Provider also waives and releases Pall from any claim against Pall which is a covered loss under the policies of insurance required pursuant to this Agreement, whether or not Provider actually obtained such policies and maintained them in effect.

10.    <u>Compliance</u>.  Provider agrees and acknowledges that Pall, and not management or any employee of Pall or any of its affiliates, is the party to which Provider shall render Services and otherwise owe its professional obligations and duties hereunder.  In performing the Services:

10.1    Provider shall comply with all Applicable Laws in performing Services pursuant to the Contract Documents.

10.2    Provider shall not disclose or exchange any personal information of any Pall employee.

10.3    If at any time during its engagement hereunder Provider discovers or otherwise becomes aware of any possible non-compliance by Pall or any of its affiliates with any federal, state or local statute, code, law or regulation or any possible material failure to comply with any Pall policy or procedure disclosed to Provider, Provider shall promptly report such matter to the Chief Financial Officer and the General Counsel of Pall Corporation, whether or not such matter arises out of or relates to the Services.

$9f53f0905333$686A7C96567B465BB77DA55BC19B1B37.docx

10.4    In the event Provider performs services at any Pall site, Provider shall comply with (i) "The Pall Rules and Procedures for Service Providers Providing On-Site Services" annexed hereto as <u>Exhibit B</u> and (ii) instructions regarding the performance of Provider's duties at Pall's properties or facilities (or at the properties or facilities of Pall's customers).

10.5    Provider shall perform the Services in accordance with the highest industry standards.  Provider will use its best efforts to complete the Services in the time frame and in accordance with the instructions of Pall, provided that Pall shall make available to Provider any data that is reasonably required by it to complete the work.

11.    <u>Subcontractors; Liens</u>.

11.1.    Provider shall not subcontract any of the Services to be provided to Pall or use any person other than specified herein without the prior written approval of Pall. Provider shall require all employees, agents and representatives of Provider performing Services hereunder, as a condition to his or her performance of Services hereunder, to execute an Acknowledgement, in the form annexed hereto as <u>Exhibit C</u>, and shall provide copies of each executed Acknowledgement to Pall prior to the commencement of any activities related to this Agreement by such person.

11.2.    Provider shall pay for all labor, services, materials, equipment, parts, and other expenses incurred by it in connection with the Services, and shall indemnify and defend and hold the Pall Indemnified Parties harmless against all claims and liens arising out of Provider's unpaid accounts. Provider shall be under a duty to satisfy Pall during the progress of any Services that all bills for labor and materials are paid as the Services progress.  Provider shall provide all Services and any related materials and equipment to Pall free of all liens, claims, and encumbrances.  To the fullest extent permitted by applicable law, Provider waives, for itself and its subcontractors and suppliers, any statutory and common law right to encumber Pall's rights or title to the Services or the real property or other personal property of Pall upon which the Services may be performed.  Provider agrees to execute (or obtain from its subcontractors and suppliers), at no cost to Pall, all documents reasonably required by Pall to confirm the foregoing. This provision shall survive termination or expiration of any SOW or this Agreement.

12.    <u>Confidential Information; Intellectual Property</u>.

12.1    Provider agrees to take every reasonable precaution necessary to keep secret and confidential all Confidential Information, and shall not use (for itself or others) nor disclose, and shall not permit the use nor disclosure of, any Confidential Information, except to the extent required for the purpose of performing Provider's activities pursuant to this Agreement, and in such event, Confidential Information shall be disclosed only to those officers, directors, employees, or approved subcontractors who require such information in order to perform activities pursuant to this Agreement.  For purposes hereof, "<u>Confidential Information</u>" shall mean all oral and written information relating to Pall and/or Pall's customers, which is disclosed or made available to or learned by Provider or Provider's Personnel in connection with the provision by Provider or

Provider's Personnel of Services to Pall, including but not limited to financial statements or data, production data, trade secrets, information relating to manufacturing and research methods and projects, production plants and other facilities, technology, apparatus, equipment and systems, marketing or customer data, information regarding Pall's employees, officers, directors and consultants, research tools, sales information, the existence, terms or conditions of this Agreement, or other information that is not generally available to the public and that relates to the business of Pall.

12.2    The foregoing obligations shall not apply: (i) to the extent such information was rightfully in Provider's possession before it is acquired hereunder and Provider can demonstrate this fact by written documents; (ii) at the time the information was acquired, to the extent Provider shows that it is a matter of public knowledge or after the time it is acquired, to the extent Provider shows that it has been published or otherwise becomes a part of public knowledge through no fault of Provider; or (iii) to information received by Provider from a third party who is under no obligation to Pall (or Pall's customers) to maintain such information in confidence and who does not impose an obligation on Provider to hold such information in confidence.

12.3    Provider shall retain Pall's Confidential Information for the length of time designated by Pall. Upon termination or expiration of the Agreement, as directed by Pall, Provider shall return or destroy all Pall's Confidential Information in its possession. There shall be no cost associated with either the return of destruction of Pall's Confidential Information. If Provider is directed to return the Confidential Information, then Provider shall return the Confidential Information as requested, and in the format requested by Pall, and Pall shall have ninety (90) days from the date of receipt of the Confidential Information to validate that it is accurate and complete. If Provider is directed by Pall to destroy Pall's Confidential Information, then the method of destruction for Pall's Confidential Information in electronic format will use three pass pseudo random data erasure or another substantially similar technology at least as effective, using Department of Defense 5220.22M standards. Provider shall destroy any paper copies of Pall's Confidential Information via Level 3 secure shredding (3/8" and cross cut). Provider shall certify in writing that it has complied with this obligation by providing Pall with a Certificate of Destruction.

12.4    "Termination Assistance Period" means a reasonable period of time designated by Pall during which Provider shall provide Termination Assistance Services. "Termination Assistance Services" means (i) Provider's cooperation with Pall or another service provider designated by Pall during the Termination Assistance Period for (i) the return or transfer of all Pall's materials and data and (ii) any professional services requested by Customer in order to facilitate the return and or transfer of such materials and data. Upon the expiration or termination of this Agreement, Provider shall provide Termination Assistance Services to Pall during the Termination Assistance Period in order to assure the orderly and complete return to Pall or Pall's designee of all Pall's materials and data.

12.5    Provider represents, warrants, and covenants that no Proprietary Information furnished by Pall shall be exported from the United States without first

complying with all requirements of the International Traffic in Arms Regulations (ITAR) and the Export Administration Regulations (EAR), regulations issued thereunder and any subsequent amendments thereto, including the requirement for obtaining any export license, if applicable. Provider shall first obtain the written consent of Pall prior to submitting any request for authority to export any such Proprietary Information subject to ITAR and EAR requirements.

12.6     All equipment and software owned on the date hereof by Provider and supplied by Provider to Pall hereunder in connection with the Services ("Provider Property") is and shall remain the property of Provider. Notwithstanding the foregoing, Pall shall have sole rights to any and all documents, reports, notes or other data produced by Provider during or relating to Provider's performance of Services and such material shall constitute Confidential Information of Pall. Provider agrees to grant Pall a non-exclusive, non-royalty bearing, perpetual license to use the Provider Property to the extent necessary in connection with the Services and Pall's use thereof and in addition to any indemnification provisions contained herein agrees to indemnify, defend, and hold harmless Pall and its affiliates from and against claims, damages, losses and expenses, including but not limited to attorneys' fees, to the extent that the same are based on or arise out of a claim that the Provider Property and/or any documents, reports, notes, or other data produced by Provider hereunder (and intellectual property rights therein) infringes a United States patent or copyright or other intellectual property of any third party; provided that Pall notifies Provider promptly in writing of the action. If the Provider Property and/or any documents, reports, notes, or other data produced by Provider hereunder (and intellectual property rights therein) becomes, or is likely to become, the subject of a patent or copyright infringement claim, Provider may, at its option, secure for Pall the right to continue using such software or replace or modify such infringing item to make it non-infringing. If neither of these alternatives is reasonably available, Provider shall give Pall a full refund for amounts paid to Provider hereunder.

12.7     All Covered Inventions shall be the property of Pall and Provider will promptly, without request, disclose to Pall all Covered Inventions. Upon request by Pall, either during or following the Term of this Agreement, Provider will execute and deliver (or cause its employees, agents or representatives to execute and deliver) all papers necessary to obtain such patent or patents, together with assignments to Pall (or such of its subsidiaries or affiliates as it may designate) of all rights, title and interest in and to such Covered Inventions, patent applications and patents and will perform all other proper acts which Pall may consider necessary or desirable to secure for Pall (or such of its subsidiaries or affiliates as it may designate) the fullest rights to such Covered Inventions and to patents or patent applications covering them. As used herein the term "Covered Invention" means any invention, discovery, improvement, modification, or refinement made or conceived by Provider, its employees, agents and/or representatives, alone or jointly with others, whether made on or off Pall's (or its customers') premises during the term of this Agreement or within one year thereafter to the extent, (i) such invention, discovery, improvement, modification or refinement is made or conceived during performance of Services hereunder or (ii) in conjunction with such invention,

discovery, improvement, modification or refinement any equipment, supplies, facilities or Confidential Information or proprietary information of Pall (or its customers) is used.

12.8    <u>Work for Hire.</u> In the event that any of the Products and/or Services are designed by Supplier for Pall, Supplier agrees that the commissioned work is a "Work for Hire", and that Pall, as the entity for which the work is prepared, shall own all right, title and interest in and to the work, and any other intellectual property rights that may arise from the work.  Supplier further agrees that to the extent that the work is not a "Work for Hire", Supplier will assign to Pall ownership of all right, title and interest in and to the work, including ownership of the entire copyright or any other intellectual property rights in the work.  Supplier agrees to execute all papers necessary for Pall to perfect its ownership of the entire copyright or other intellectual property rights in the work. Supplier represents and warrants that the work it creates or prepares for Pall will be original, will not infringe upon the rights of any third party and will not have been previously assigned, licensed or otherwise encumbered.

12.9    Provider has implemented information security policies and safeguards to preserve the security, integrity, and confidentiality of Pall confidential information and to protect against unauthorized access and anticipated threats or hazards thereto, that meet the objectives of the Interagency Guidelines Establishing Standards for Safeguarding Customer Information as set forth in Section 501(b) of the Gramm-Leach-Bliley Act. Provider agrees to remain fully responsible for and liable to Pall for any and all violations of the requirements of this section by Provider or its employees or agents (each, a "Security Incident").  In the event of a Security Incident or a material breach of data security which may impact the confidentiality, integrity or availability of Pall information, Provider shall notify Pall via telephone within 24 hours upon discovery of said breach to allow Pall to begin necessary notification and remediation efforts.  Further, Provider shall give Pall written notice of same within 48 hours of the discovery of said breach.  Provider shall promptly take all necessary and advisable actions to (and shall cooperate fully with Pall in all reasonable and lawful efforts to) prevent, mitigate, remediate, and/or rectify such occurrence. Provider shall reasonably cooperate with Pall and its auditors, assessors, and investigators, and in conjunction with Pall, shall cooperate with any third parties investigating the same, including without limitation, any federal or state agencies, and allow them to reasonably investigate, review, and audit Provider's facilities, systems, files, procedures, and records related to such occurrence.  Any public disclosures required by law or other regulations, or deemed advisable regarding the Security Incident shall, unless prohibited by law or applicable regulation, be made by Provider only with the prior approval of Pall, such approval not to be unreasonably withheld or delayed.

12.10    <u>Legal Proceedings.</u>  Pall's litigation response plan includes policies and procedures to prepare for and respond to discover requests, subpoenas, investigatory demands and other requirements for information related to legal and regulatory proceedings ("Litigation Response Plan").  To the extent requested by Pall, Provider shall comply with Pall's Litigation Response Plan, as it may be revised from time to time, including preparing for and complying with requirements for preservation and production of data in connection with legal and regulatory proceedings and government

investigations.  If Pall is required to, or sees a risk that it shall be required to, preserve and/or produce any Confidential Information possessed by Provider or under Provider's control in the context of legal proceedings or investigations, Pall may send Provider a notice ("Litigation Requirements Notice") describing the items to be preserved or produced in reasonable detail.  Upon receipt of a Litigation Requirements Notice, Provider shall fully cooperate with Pall in developing a reasonable, complete and cost-effective plan for preserving and/or producing items covered by such Litigation Requirement Notice.  Provider shall (a) fully cooperate with Pall in generating information to be presented in legal proceeding, (b) promptly report to Pall on its activities related to complying with the requirements described in the Litigation Requirement Notice, and (c) issue periodic reports on a schedule to be agreed to by the Parties.

12.11   Provider acknowledges that violation by Provider, its employees, agents or representatives of the provisions of this Section 12 would cause irreparable harm to Pall which is not adequately compensable by monetary damages.  In addition to other relief, it is agreed that Pall shall be entitled to seek injunctive relief from a court of competent jurisdiction to prevent any actual or threatened violation of such provisions without the necessity of showing irreparable harm or posting bond.

13.   <u>Agreement to Not Employ</u>.

Provider agrees to refrain from hiring, or soliciting for hire, directly or indirectly, an employee of Pall for the duration of the Term and for a period of 1 year following its expiration or termination.  Provider shall not be prevented from hiring any such employee who responds to a general hiring program conducted in the ordinary course of business and not specifically directed to such employee.

14.   <u>Non-Competition</u>.

Provider agrees that for the Term, and for a period of one year thereafter, Provider will not, without Pall's prior written consent, solicit or enter into any business relationship for the provision of Services with any competitor of Pall.

15.   <u>Injunctive Relief</u>.

Provider acknowledges that the restrictive covenants set out in this Agreement are necessary in order to protect and maintain the proprietary interests and other legitimate business interests of Pall.  Provider further acknowledges that the remedy at law for any breach or threatened breach of this Agreement will be inadequate and that, accordingly, Pall, in addition to all other available remedies, is entitled to injunctive relief.  Nothing in this clause is to be construed as prohibiting Pall from pursuing any other remedies for such breach or threatened breach.

16.    <u>General Provisions</u>.

16.1.    <u>Entire Agreement; Interpretation</u>.    This Agreement together with all exhibits, schedules and attachments incorporated herein, any non-disclosure agreement or confidentiality agreement executed by the Parties in connection with this Agreement, any purchase order issued by Pall hereunder, any Statement of Work or Change Order approved in writing by Pall and any other documents listed in, and any exhibits, schedules or addenda to this Agreement or any SOW (collectively, the "<u>Contract Documents</u>") contains the Parties' entire understanding and supersedes all prior agreements and understandings, both written and oral, between the Parties, in each case, with respect to the subject matter hereof.

a.    This Agreement is a framework agreement; Pall may purchase and Provider may sell Services, as specified in one or more SOWs.  Each such SOW together with this Agreement, shall constitute an agreement between the Parties and shall be deemed to be a part of this Agreement. The terms and conditions of this Agreement, and the SOWs delivered hereunder, shall govern all transactions pertaining to the Services that may be entered into by Provider and Pall worldwide, from time to time hereafter, unless expressly otherwise agreed in writing.

b.    In the event of a conflict between the terms of this Agreement and a SOW, the terms of the SOW shall take precedence to the extent that they are not preprinted terms; but the terms of this Agreement shall take precedence over any preprinted terms in a SOW.

c.    Any preprinted or boilerplate terms and conditions on any documents issued by the Parties are hereby deleted and declared null and void.

d.    Words that have a well-known technical or trade meaning are used throughout this Agreement in accordance with such recognized or well-known meaning unless specifically defined otherwise.

16.2.    <u>Assignment</u>.  Provider may not assign, transfer, convey or subcontract this Agreement, or delegate any rights or obligations under this Agreement, whether voluntarily or involuntarily, without the prior written consent of Pall, which consent Pall may withhold in its sole and absolute discretion.   The foregoing prohibition includes, without limitation, any assignment which would otherwise occur by operation of law, merger, consolidation, reorganization, transfer or other change of Provider's corporate, partnership or proprietary structure.   Any attempted or purported assignment, transfer, conveyance, subcontract or delegation in violation of the provisions hereof will be void and shall entitle Pall to terminate this Agreement effective as of the date of such purported attempted or assignment.

16.3.    <u>Successors and Assigns</u>.  The rights and liabilities of the Parties hereto will bind and inure to the benefit of their respective permitted successors and assigns, as the case may be.

$9f53f0905333$686A7C96567B465BB77DA55BC19B1B37.docx

16.4.     Amendment.   This Agreement is subject to change only by a written document executed by both Parties.  No action, conduct, or course of dealing by Pall shall act to waive or modify the requirement that amendments, SOWs, Change Orders or any other modifications to this Agreement must be in writing signed by both Parties.

16.5.     Further Actions.   The Parties agree to provide such information, execute and deliver such instruments and documents and to take such other action as may be necessary or reasonably requested by the other Party in order to give full effect to this Agreement and to carry out the intent of this Agreement and the Parties' obligations hereunder.

16.6.     Expenses.   Except as expressly set forth herein, each Party shall pay all of its own fees and expenses (including, without limitation, all legal, accounting and other advisory fees) incurred in connection with the negotiation, execution and performance of this Agreement.

16.7.     Headings.   Section headings have been inserted for ease of reference only and shall not be used in the construction or interpretation of this Agreement.

16.8.     Severability.   If any portion of this Agreement is held to be illegal, invalid or unenforceable, the remaining portions of this Agreement shall remain binding and enforceable.   In such event, the Parties shall, if possible, substitute for such invalid provision a valid provision corresponding to the spirit and purpose thereof.

16.9.     Third Parties.   The provisions of this Agreement are intended for the sole benefit of the Parties and their respective permitted successors and assigns.   No other person or Party shall have any rights or interests herein, direct or indirect, by reference or otherwise, except as otherwise expressly provided in this Agreement.

16.10.   Force Majeure.   Neither Party shall be liable under this Agreement for delays, failures to perform, damages, losses or destruction, or malfunction of any equipment or software, or any consequence thereof, caused by fire, earthquake, flood, water, the elements, strikes or other labor disturbances, unavailability of transportation, failure of normal sources of supply, inability to obtain raw materials, terrorism, war, acts or omissions of third parties other than subcontractors of a Party, or any other cause beyond the reasonable control of a Party and not caused by its negligence (each a "Force Majeure Event").   The Party whose performance is affected by such Force Majeure Event shall promptly notify the other in writing of the Force Majeure Event and how long it anticipates the circumstances to continue and takes all reasonable steps to avoid further delay and to proceed with the due performance of its obligations hereunder.

16.11.   EEO.   Pall is an equal opportunity employer and federal contractor or subcontractor.   Consequently, the Parties agree that, as applicable, they will abide by the requirements of 41 CRF 60-1.4(a), 41 CFR 60-300.5(a) and 41 CRF 60-741.5(a) and that these laws are incorporated herein by reference. These regulations prohibit discrimination against qualified individuals based on their status as protected veterans or individuals with disabilities, and prohibit discrimination against all individuals based on their race,

color, religion, sex, or national origin. These regulations require that covered prime contractors and subcontractors take affirmative action to employ and advance in employment individuals without regard to race, color, religion, sex, national origin, protected veteran status or disability. The Parties also agree that, as applicable, they will abide by the requirements of Executive Order 13496 (29 CRF Part 471, Appendix A to Subpart A), relating to the notice of employee rights under federal labor laws.

16.12. <u>Survival</u>. All provisions of this Agreement setting forth representations or warranties by either Party, providing for indemnification or limitation of, or protection against liability of either Party, setting out confidentiality, non-solicitation obligations and all obligations which accrued prior to termination, the general provisions herein together with those sections the survival of which is necessary for the interpretation or enforcement of this Agreement, shall survive the termination, cancellation or expiration of this Agreement.

16.13. <u>Notices</u>. All notices permitted or required in connection with this Agreement shall be in writing and shall deemed given (i) if mailed by certified mail, return receipt requested, three business days after dispatch; (ii) if delivered to a recognized overnight express mail service or carrier for next day delivery, on the first business day after dispatch; (iii) if delivered on a business day by personal delivery or electronic or facsimile transmission, with "hardcopy" original to follow as provided in clause (i), (ii) or (iii) above, on the same day as delivered, otherwise on the next business day; in each case, addressed as follows (or to such other address as either Party may notify the other Party in writing):

| if to Pall, to: | Pall Corporation<br>25 Harbor Park Drive<br>Port Washington, New York 11050<br>Facsimile: 516-801-9781<br>Attention: Strategic Sourcing |
|---|---|
| with a copy to: | Pall Corporation<br>25 Harbor Park Drive<br>Port Washington, New York 11050<br>Facsimile: 516-801-9781<br>Attention: Legal Department |
| if to Provider to: | Cleanspace Modular, LLC<br>607 Airport Road<br>Doylestown, Pennsylvania 18902<br>Attention: George Wiker |

16.14. <u>No Waiver; Remedies Cumulative</u>. No course of dealing or failure to enforce strictly any term, right or condition of this Agreement shall be construed as a waiver of that term, right or condition. The remedies set forth herein are cumulative and not exclusive of any remedies provided by law or in equity.

16.15. <u>Governing Law</u>.  This Agreement, and all the rights and duties of the Parties arising from or relating in any way to the subject matter of this Agreement or the transaction(s) contemplated by it, shall be governed by the laws of the State of New York, regardless of conflict of laws principles.

16.16. <u>Jurisdiction</u>.  The Parties hereby unconditionally and irrevocably submit to (and waive any objection on the grounds of inconvenient forum or otherwise) the jurisdiction of the Supreme Court of the State of New York, County of Nassau or the United States District Court for the Southern District of New York, which courts shall have exclusive jurisdiction to adjudicate and determine any suit, action or proceeding regarding or relating to this Agreement. A judgment, order or decision of those courts in respect of any such claim or dispute shall be conclusive and may be recognized and enforced by any courts of any state, country or other jurisdiction.

16.17. <u>Waiver of Jury Trial</u>.   EACH PARTY HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT.

16.18. <u>Joint Drafting</u>.  This Agreement is the result of joint drafting and negotiation between the parties and their respective counsel.  This Agreement will be interpreted fairly in accordance with its terms and conditions without construction against the party that has or has been alleged to have been responsible for its drafting. Provider shall not be excused from any liability on the grounds of misinterpretation of any matter relating to the conditions, specifications or requirements specified in this Agreement or the terms and conditions hereof.

16.19. <u>Publicity</u>.  Neither party shall advertise or otherwise disclose the existence or terms of the Agreement or any other aspect of the relationship between the Provider and Pall without the other party's prior written consent, except as otherwise required by applicable law or legal proceeding.

16.20. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, and by electronically scanned signature or facsimile, all of which shall be considered one and the same agreement and each of which shall be effective as a manually executed counterpart of this Agreement.

IN WITNESS WHEREOF, the parties by their duly authorized officers or representatives have executed this Agreement on the dates set forth below.

PALL CORPORATION                          CLEANSPACE MODULAR, LLC

By: _____            By: _____
                                         (Signature of Authorized Principal or Officer)

Name: __Brett Mannix_____         Name: __George Wiker_____
Title: __Regional Strategic Sourcing Manager__  Title: __CEO_____
Date: __17 December 2020 | 13:01:55 PST__  Date: __17 December 2020 | 13:05:18 PST__

# **EXHIBIT A**

STATEMENT OF WORK

**EXHIBIT B**

**The Pall Rules and Procedures for Service Providers Providing On-Site Services**

1. All rubbish, debris, cartons, etc., shall be deposited in Provider provided dumpsters which will be located at Pall's direction.

2. All vehicles including personal cars must enter, leave or park at the job site as directed by Pall.

3. Provider shall be responsible for keeping the area in which work is being performed in a safe and clean condition.

4. Any interruption of the operations of the facility that may be necessary for the prosecution of the work must be authorized in writing by Pall.

5. The Provider shall be responsible for submitting to Pall Corporation, at least one week's advance notice of any shutdown or cutover of service as may be required for the completion of the work. Such shutdowns or cutovers shall be scheduled by Pall for its convenience. Public agencies involved in such shutdowns or cutovers shall also be notified in writing by the Provider with copies of all correspondence to Pall.

6. The Provider shall fully comply with all applicable provisions of local, state and federal rules and regulations including those dealing with safety and health.

7. Activities of Pall shall take precedence over all of the Provider's operation.

8. Provider will distribute to all of its personnel working at the job site a copy of the Pall Rules and Procedures for Service Providers and Pall Safety and Environmental Conditions for Work at Pall Sites.

9. Provider and Provider's personnel shall adhere to the following rules. It is prohibited to engage in any of the following activities on any Pall Facility:

   - Destroying or removing without permission any Pall property, or property not owned by the Provider or Provider's personnel.
   - Provoking or engaging in a fight, disturbance or horseplay.
   - Reporting for work under the influence of alcohol or drugs.
   - Possession or use of alcoholic beverages or drugs on the job site.
   - Gambling or possession of gambling paraphernalia on the job site.
   - Sleeping on the job.
   - Performing work in an unsafe manner, dangerous to oneself or other personnel.
   - Possession of firearms or other weapons on the job site.

- Refusing to allow parcel, lunch box or personal vehicle examination by appropriate Pall personnel.

- Smoking in prohibited areas.

10    Provider shall have each employee sign the logbook maintained at the guard booth when entering and leaving the property each day. Each employee shall wear in the appropriate place, the badge issued at the guard booth, at all times when in the building. The badge shall be turned into the guard when signing out.

11.    Provider shall provide its own hoisting; scaffolding, lines, and grades, as required.

12.    Use of Pall's cafeteria and sanitary facilities will be subject to the approval of the Pall Project Engineer. Pall's cafeteria shall not be used between 12:00 and 12:30 p.m.

13.    Location of Provider's items of plant, tools, equipment, toolboxes, construction materials, and the like shall be approved by Pall. Provider shall be solely responsible for the loss or damage to this property or operations.

14.    Construction personnel are not permitted access to any part of the building except as required for the completion of the work.]

**<u>Pall Safety and Environmental Conditions for Work at Pall Sites</u>**

1.    The OSHA Hazard Communication Standard ("Standard") (29 CFR 1910.1200) requires that employers provide information to their employees about the hazardous chemicals to which they may be exposed by means of a hazardous communication program, labels and others forms of warning, material safety data sheets, information and training.  Provider must maintain the appropriate hazard communication program including all required employee instruction.  Provider will also maintain compliance with all applicable Federal, State and Local environmental and health and safety regulations.

2.    Any hazardous chemicals or materials brought onto the premises from Provider will be labeled appropriately in accordance with the Standard.

3.    Provider must provide the Pall Facility Manager with a list of all materials covered by the Standard that Provider's personnel intend to bring on site before bringing them on Pall's premises.  The Material Safety Data Sheet (MSDS) for each hazardous chemical should accompany this list.  The copies of the MSDSs must be retained by Provider foreman or other designated individual so that the sheets are available for inspection.

4.    Provider shall not tamper with or otherwise disturb any Lockout or Tagout equipment of Pall employees.  Provider must inform the Pall Facility Manager in advance of any Lockout/Tagout operations performed by Provider on Pall premises.

5.    Provider's personnel are not authorized to enter any confined space on Pall's property unless specifically required by the service or construction.  If Provider's personnel are entering confined spaces they must submit a copy of their Confined Space Policy to the Pall Facility Manager for approval prior to conducting work on Pall's premises.

6.    Should an accident occur on Pall premises involving Provider's personnel, the Provider's supervisor or designee should immediately file a completed Pall Incident/Accident Investigation Report Procedure with the Pall Facility Manager.

7.    It is the responsibility of the Provider to request necessary information from the Pall Facility Manager regarding any hazards presented to Provider's employees as the result of the activities of Pall employees or other service providers in the area.

8.    Arrangements must be made by Provider for the disposal of any wastes generated by its personnel.  No materials may be placed in Pall dumpsters or garbage bins without approval from the Facility Manager.  All waste must be placed in suitable containers in designated areas at the end of each work shift.  No hazardous materials may be left at the work site without proper written approval.

Any questions concerning Pall's Hazard Communication Policy should be addressed to the Pall Facility Manager or the Pall Environmental and Safety Coordinator.

Exhibit B                                                                                                                  3

## EXHIBIT C

### Acknowledgement of Receipt and Understanding of
### Service Providers Agreement and Confidentiality Agreement

TO:        Pall Corporation

FROM:   **[INSERT NAME OF EMPLOYEE OF PROVIDER PERFORMING SERVICES HEREUNDER]  [EACH EMPLOYEE PERFORMING SUCH SERVICES MUST EXECUTE AN ACKNOWLEDGEMENT]**

I hereby acknowledge receiving and reading the Services Agreement dated the date hereof between Pall Corporation and **[INSERT NAME OF PROVIDER]**.  I understand my obligations thereunder, including of confidentiality and non-disclosure, and agree to comply with all such obligations and with all applicable federal, state and local laws and regulations, the Pall Rules and Procedures for Service Providers, and Pall's instructions.  To the extent I visit any Pall site, I agree to comply with the Pall Rules and Procedures for Service Providers.  Those persons with a need-to-know to whom I make disclosures will also be informed of their obligations and required to acknowledge these obligations prior to any disclosure from me.

Date:_____        _____
                                                                                            Signature

                                                                                            _____
                                                                                            Print Name

Exhibit C                                                                                                                    1