# EXHIBIT B

**EXHIBIT A**

STATEMENT OF WORK
Between
Pall Corporation ("Pall") and Cleanspace Modular, LLC ("Provider")
For
Project Makers:  Pall Timonium Cleanroom(s)

This Statement of Work (this "SOW") is annexed to and made a part of the Master Services Agreement by and between Pall and Provider (the "Agreement") dated December 22nd, 2020 and describes the Services to be provided to Pall.  All capitalized terms shall have the same meanings as set forth in the Agreement unless expressed otherwise herein.

**1.      Overview**

    1.1.    Locations

        Pall Timonium – Plant 2
        2120 Greenspring Drive
        Timonium, Maryland 21093

    1.2.    Scope/Objective

        a.      Design, procurement, and construction related to one clean non-classified cleanroom (CNC) and one ISO7 certified cleanroom within Pall Timonium – Plant 2.  All design, procurement, and construction to be in accordance with mutually agreed upon User Requirements Specification (URS) attached to this SOW in Appendix 1.

    1.3.    Standards/Specifications

        a.      See URS within Appendix 1

    1.4.    Contact Persons

Pall Contacts

| Name | Role | Phone | eMail |
|---|---|---|---|
| Brett Mannix | Strategic Sourcing | 443-472-3455 | Brett_Mannix@pall.com |
| Tom Busch | Project Manager | 410-512-7166 | Thomas_Busch@pall.com |
| Abiy Belege | Plant Manager | 410-409-2864 | Abiy_Belege@pall.com |
| Angel Morfa | Facilities Manager | 410-490-7312 | Angel_Morfa@pall.com |

CleanSpace Contacts

| Name | Role | Phone | Email |
|---|---|---|---|
| George Wiker | CEO | 609-744-7290 | gwiker@cleanspaceus.com |
| Glenn VandeGrift | President | 856-264-7924 | gvandegrift@cleanspaceus.com |
| Henry Hubbs | Project Manager | 215-262-3396 | hhubbs@cleanspaceus.com |
| Derick Edwards | Commissioning Manager | 215-692-0382 | dedwards@cleanspaceus.com |

**2. Project Schedule**

Project Schedule enclosed within Appendix 1. Final delivery date will be mutually agreed between Pall and CleanSpace with final schedule to be amended no later than 5/7/21.

**3. Provider Responsibilities**

3.1. Deliverables in accordance with the documents within Appendix 1. Any exceptions or changes to these documents will be noted and agreed in writing by CleanSpace and Pall.

3.2. Schedules and Timelines in accordance with the Project Schedule within Appendix 1.

**4. Client Responsibilities**

Pall commits to participation in all design information gathering and reviews and to provide timely approvals and feedback to facilitate provider compliance with project schedule within Appendix 1.

**5. Mutual Responsibilities**

5.1. Progress Meetings – periodic project review/update meetings as defined by the URS within Appendix 1.

**6. Compensation and Payment Schedule**

6.1. Pall will pay Provider with respect to the Services based on based on this SOW and agreed URS a Lump Sum amount not to exceed Two million, Six Hundred and Fifty Thousand Dollars ($2,650,000) based upon the quantities itemized in the estimate, see Appendix 1. Any and all change orders that would exceed this total lump sum must be submitted and approved by Pall in writing.

6.2. Payments will be made monthly as described below in Section 7 "Payment Schedule" of this SOW.

6.3. Payments will be made via Pall Supplier Credit Card Program.

**7. Payment Schedule**

7.1.     Initial Five Hundred Thousand Dollar ($500,000.00) deposit of total sum will be made at the commencement of the project based upon a schedule of values, a second Five Hundred Thousand Dollar ($500,000.00) deposit will be made to enable long lead material procurement. Following payments will be made monthly, provided that an Application for Payment is received by Pall not later than the twenty-fifth (25) day of a month, Pall shall make payment of the certified amount in the Application for Payment to the Provider at the above agreed payment term. If an Application for Payment is received by Pall after the application date fixed above, payment shall be made by the Pall not later than thirty (30) days after Pall receives the Application for Payment.  Retainage in the amount of 5% will be withheld from each progress payment until Final Completion.

**7.2.    Applications for Payment**

a.     No later than the twenty-fifth (25) of each month, the Provider shall submit to Pall an itemized Application for Payment for Work completed in accordance with the values stated in this Agreement. The Application shall be supported by data substantiating the Provider's right to payment as the Pall or Architect may reasonably require, such as evidence of payments made to, and waivers of liens from, subcontractors and suppliers. Payments shall be made on account of materials and equipment delivered and suitably stored at the site for subsequent incorporation in the Work. If approved in advance by the Pall, payment may similarly be made for materials and equipment stored, and protected from damage, off the site at a location agreed upon in writing.

b.     The Provider warrants that title to all Work covered by an Application for Payment will pass to Pall no later than the time of payment. The Provider further warrants that upon submittal of an Application for Payment, all Work for which Payment have been previously issued and payments received from Pall shall, to the best of the Provider's knowledge, information, and belief, be free and clear of liens, claims, security interests, or other encumbrances adverse to Pall's interests.

**7.3.    Progress Payments**

a.     After Pall has reviewed Application for Payment, Pall shall make payment in the manner provided in Section 6 of this SOW.

**7.4.    Substantial Completion**

a.     Substantial Completion is the stage in the progress of the Work when the Work or designated portion thereof is sufficiently complete in accordance with the Contract Documents so Pall can occupy or utilize the Work for its intended use.

b.     If Provider falls behind in the Progress Schedule for any reason (other than an Unavoidable Delay (as defined herein) or a written change order in which Pall approved an extension of time), Provider, at its sole cost and expense and at no cost to Pall, shall take whatever steps that may be necessary to improve its progress (including, without limitation, the institution of overtime operations) and, if requested by Pall, shall submit operational plans to demonstrate the manner in which the lost time may be regained.

c.  Provider agrees that if and to the extent that there are delays or hindrances (including Unavoidable Delays) in the performance of its services, Provider shall not be entitled to extra compensation or damages of any kind and Provider's sole remedy shall be an extension of the Contract Time under the Progress Schedule.

d.  Provider acknowledges that it is and will be impracticable to determine the actual damages that Pall will sustain in the event of and by reason of a failure to achieve the Contract Times. It is therefore agreed that the Provider and the Provider's surety, if any, shall be liable for and shall pay Pall the sums hereinafter stipulated as liquidated damages, and not as a penalty, Five Hundred Dollars ($500.00) for each calendar day of delay after the date established for Substantial Completion in the Contract Documents, as amended, until the Work is substantially complete. Provider shall not be held responsible for delays related to the availability of materials which are outside of their control and unavoidable.

e.  No time has been anticipated nor included in the Provider's proposal or in the Contract Documents to be lost to inclement weather. The Provider will advise Pall, in writing, on a monthly basis, as to the status of the delays claimed to be lost due to inclement weather. Such claim shall entitle the Provider to a one calendar day time extension for each calendar day lost due to inclement weather. Timeline extensions for weather will be mutually agreed to in writing on a monthly basis.

**7.5.  Final Completion and Final Payment**

a.  Upon receipt of a final Application for Payment, Pall will inspect the Work. When Pall finds the Work acceptable and the Contract fully performed, Pall will promptly issue a final Payment (including all retainage) upon Provider release from any and all waivers, liens, claims, security interests, or encumbrances of any kind arising out of the contract.

IN WITNESS WHEREOF, the parties have executed this Statement of Work on the date or dates indicated below to be effective in accordance with this SOW.

| PALL CORPORATION | CLEANSPACE MODULAR, LLC |
|---|---|
| By: _Naresh Narasimhan_ (DocuSigned) | By: _George Wiker_ (DocuSigned) |
| | (Signature of Authorized Principal or Officer) |
| Name: Simon Fox | Name: George Wiker |
| Title: VP Sourcing | Title: President, Pall Industrial / CEO |
| Date: 04 May 2021 \| 15:52:50 EDT | Date: 04 May 2021 \| 11:32:27 PDT / 01 May 2021 \| 04:33:28 PDT |

Exhibit A                                                                                                          5

**EXHIBIT B**

**The Pall Rules and Procedures for Service Providers Providing On-Site Services**

1. All rubbish, debris, cartons, etc., shall be deposited in Provider provided dumpsters which will be located at Pall's direction.

2. All vehicles including personal cars must enter, leave or park at the job site as directed by Pall.

3. Provider shall be responsible for keeping the area in which work is being performed in a safe and clean condition.

4. Any interruption of the operations of the facility that may be necessary for the prosecution of the work must be authorized in writing by Pall.

5. The Provider shall be responsible for submitting to Pall Corporation, at least one week's advance notice of any shutdown or cutover of service as may be required for the completion of the work. Such shutdowns or cutovers shall be scheduled by Pall for its convenience. Public agencies involved in such shutdowns or cutovers shall also be notified in writing by the Provider with copies of all correspondence to Pall.

6. The Provider shall fully comply with all applicable provisions of local, state and federal rules and regulations including those dealing with safety and health.

7. Activities of Pall shall take precedence over all of the Provider's operation.

8. Provider will distribute to all of its personnel working at the job site a copy of the Pall Rules and Procedures for Service Providers and Pall Safety and Environmental Conditions for Work at Pall Sites.

9. Provider and Provider's personnel shall adhere to the following rules. It is prohibited to engage in any of the following activities on any Pall Facility:

   - Destroying or removing without permission any Pall property, or property not owned by the Provider or Provider's personnel.
   - Provoking or engaging in a fight, disturbance or horseplay.
   - Reporting for work under the influence of alcohol or drugs.
   - Possession or use of alcoholic beverages or drugs on the job site.
   - Gambling or possession of gambling paraphernalia on the job site.
   - Sleeping on the job.
   - Performing work in an unsafe manner, dangerous to oneself or other personnel.
   - Possession of firearms or other weapons on the job site.

- Refusing to allow parcel, lunch box or personal vehicle examination by appropriate Pall personnel.
- Smoking in prohibited areas.

10  Provider shall have each employee sign the logbook maintained at the guard booth when entering and leaving the property each day. Each employee shall wear in the appropriate place, the badge issued at the guard booth, at all times when in the building. The badge shall be turned into the guard when signing out.

11. Provider shall provide its own hoisting; scaffolding, lines, and grades, as required.

12. Use of Pall's cafeteria and sanitary facilities will be subject to the approval of the Pall Project Engineer. Pall's cafeteria shall not be used between 12:00 and 12:30 p.m.

13. Location of Provider's items of plant, tools, equipment, toolboxes, construction materials, and the like shall be approved by Pall. Provider shall be solely responsible for the loss or damage to this property or operations.

14. Construction personnel are not permitted access to any part of the building except as required for the completion of the work.]

**Pall Safety and Environmental Conditions for Work at Pall Sites**

1. The OSHA Hazard Communication Standard ("Standard") (29 CFR 1910.1200) requires that employers provide information to their employees about the hazardous chemicals to which they may be exposed by means of a hazardous communication program, labels and others forms of warning, material safety data sheets, information and training. Provider must maintain the appropriate hazard communication program including all required employee instruction. Provider will also maintain compliance with all applicable Federal, State and Local environmental and health and safety regulations.

2. Any hazardous chemicals or materials brought onto the premises from Provider will be labeled appropriately in accordance with the Standard.

3. Provider must provide the Pall Facility Manager with a list of all materials covered by the Standard that Provider's personnel intend to bring on site before bringing them on Pall's premises. The Material Safety Data Sheet (MSDS) for each hazardous chemical should accompany this list. The copies of the MSDSs must be retained by Provider foreman or other designated individual so that the sheets are available for inspection.

4. Provider shall not tamper with or otherwise disturb any Lockout or Tagout equipment of Pall employees. Provider must inform the Pall Facility Manager in advance of any Lockout/Tagout operations performed by Provider on Pall premises.

5. Provider's personnel are not authorized to enter any confined space on Pall's property unless specifically required by the service or construction. If Provider's personnel are entering confined spaces they must submit a copy of their Confined Space Policy to the Pall Facility Manager for approval prior to conducting work on Pall's premises.

6. Should an accident occur on Pall premises involving Provider's personnel, the Provider's supervisor or designee should immediately file a completed Pall Incident/Accident Investigation Report Procedure with the Pall Facility Manager.

7. It is the responsibility of the Provider to request necessary information from the Pall Facility Manager regarding any hazards presented to Provider's employees as the result of the activities of Pall employees or other service providers in the area.

8. Arrangements must be made by Provider for the disposal of any wastes generated by its personnel. No materials may be placed in Pall dumpsters or garbage bins without approval from the Facility Manager. All waste must be placed in suitable containers in designated areas at the end of each work shift. No hazardous materials may be left at the work site without proper written approval.

Any questions concerning Pall's Hazard Communication Policy should be addressed to the Pall Facility Manager or the Pall Environmental and Safety Coordinator.

# EXHIBIT C

## Acknowledgement of Receipt and Understanding of
## Service Providers Agreement and Confidentiality Agreement

TO:     Pall Corporation

FROM:   **[INSERT NAME OF EMPLOYEE OF PROVIDER PERFORMING SERVICES HEREUNDER]  [EACH EMPLOYEE PERFORMING SUCH SERVICES MUST EXECUTE AN ACKNOWLEDGEMENT]**

I hereby acknowledge receiving and reading the Services Agreement dated the date hereof between Pall Corporation and **[INSERT NAME OF PROVIDER]**.  I understand my obligations thereunder, including of confidentiality and non-disclosure, and agree to comply with all such obligations and with all applicable federal, state and local laws and regulations, the Pall Rules and Procedures for Service Providers, and Pall's instructions.  To the extent I visit any Pall site, I agree to comply with the Pall Rules and Procedures for Service Providers.  Those persons with a need-to-know to whom I make disclosures will also be informed of their obligations and required to acknowledge these obligations prior to any disclosure from me.

Date:_____     _____
                                                              Signature

                                                _____
                                                              Print Name

Exhibit C                                                                                                                           1

## Appendix 1

### Reference Documents

1. User Requirement Specification (URS), Global User Requirement Specification (URS) for PALL 'Cleanroom' installations, Revision 1, March 20, 2019.
2. D2 Groups Design Package, IFP Drawing Set issued 2/2/21.
3. CleanSpace Project Schedule, Revision C, 4/29/21.
4. CleanSpace Project Cost Estimate including a bill of quantities, 4/27/21.

Exhibit C                                                                                              2