UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PALL CORPORATION,<br><br>                              Plaintiff,<br><br>               -against-<br><br>CLEANSPACE MODULAR, LLC,<br><br>                              Defendant. | Case No. 1:23-cv-02082<br><br>**OPINION AND ORDER** |

JENNIFER L. ROCHON, United States District Judge:

Plaintiff Pall Corporation ("Plaintiff" or "Pall") filed this action against Defendant CleanSpace Modular, LLC ("Defendant" or "CleanSpace") alleging negligent misrepresentation ("Count I"), breach of contract ("Count II"), breach of the implied covenant of good faith and fair dealing ("Count III"), and unjust enrichment ("Count IV"). ECF No. 1 ("Compl.") ¶¶ 44-70. Plaintiff "demands a trial by jury on all issues triable by a jury as a matter of right." *Id.* at 9. Defendant now moves under Federal Rule of Civil Procedure ("Rule") 12(b)(6) to dismiss Counts I, III, and IV of the Complaint. ECF No. 20 ("Dismiss Br."). Defendant also moves under Rule 39(a) to strike Plaintiff's jury demand. ECF No. 22 ("Strike Br."). Plaintiff opposes both motions. ECF Nos. 26 ("Strike Opp."), 27 ("Dismiss Opp."). Plaintiff also requests leave to amend if the Court dismisses any of its claims. Dismiss Opp. at 11. For the reasons given below, the Court GRANTS Defendant's motion to dismiss Counts I and Count III, DENIES Defendant's motion to dismiss Count IV, DENIES Defendant's motion to strike Plaintiff's jury demand without prejudice, and GRANTS Plaintiff's request for leave to amend.

1

## BACKGROUND

The following facts are taken from the Complaint, the Master Services Agreement (the "MSA"), and the Statement of Work (the "SOW"); the latter two documents are attached to the Complaint. *See Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) (on a motion to dismiss, a court may consider documents appended to the complaint). The Court assumes the Complaint's allegations to be true for the purpose of deciding Defendant's motion and construes them in the light most favorable to Plaintiff. *See Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).

On December 17, 2020, Plaintiff and Defendant entered into the MSA. Compl. ¶ 6; *see* ECF No. 1-1 ("MSA"). The MSA says that the services provided by Defendant "will be described in a statement of work substantially in the form attached" to the MSA. MSA § 1.2. Plaintiff and Defendant executed the SOW on May 4, 2021. Compl. ¶ 8; *see* ECF No. 1-2 ("SOW"). The parties treat the MSA and the SOW as a single "Timonium Contract," and the Court will do the same. *See* Compl. ¶ 10; Dismiss Br. at 2. The parties agree that the Timonium Contract is valid and binding. *See* Compl. ¶ 10; Dismiss Br. at 10 n.2.

The Timonium Contract provided for the construction of two "cleanroom[s]," SOW § 1.2, which are "room[s] or enclosure[s] in which dust, microorganisms, and other contaminants are eliminated or reduced to very low levels, esp[ecially] for the purpose of manufacturing electronic components and some types of medical equipment," *Clean room*, Oxford English Dictionary, https://www.oed.com/dictionary/clean-room_n (last visited Oct. 28, 2023). Defendant agreed "to design, procure materials for, and construct two cleanrooms in accordance with [Plaintiff's] guidelines, specifications, and requirements, specifically the temperatures of the two cleanrooms." Compl. ¶ 12. In exchange, Plaintiff promised to pay

Defendant $2,650,000. *Id.* ¶ 13. The agreed-upon deadline for completion was May 7, 2021. *Id.* ¶ 14. The MSA also contained the following clause:

> 16.17. <u>Waiver of Jury Trial</u>. EACH PARTY HEREBY IRREVOCABLY WAIVES ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THIS AGREEMENT.

MSA § 16.17.

Defendant "failed to construct the two cleanrooms, as required by the Timonium Contract." Compl. ¶ 15. Plaintiff attributes this failure to Defendant's "poor project management," "failure to obtain the proper permits required for the cleanrooms," and "failure to pay its vendors." *Id.* ¶ 16. Defendant also installed faulty heating, ventilation, and air condition ("HVAC") systems in both cleanrooms, which "interfered with both cleanrooms' respective temperature regulation." *Id.* ¶ 17. Plaintiff "attempted to mitigate the respective damages for both inoperable cleanrooms," *id.* ¶ 20, at a total cost exceeding $420,000, *id.* ¶ 21.

Defective cleanrooms are not the only asserted source of frustration for Plaintiff. Defendant "placed numerous charges wholly unrelated to the Timonium Contract on [Plaintiff's] credit card." *Id.* ¶ 22. On September 22, 2021, Defendant "charged [Plaintiff's] credit card numerous times" for a total of $1,045,000. *Id.* ¶ 25. Plaintiff says that it cannot reconcile these charges (the "Credit-Card Charges") with any valid charges related to the Timonium Contract. *Id.* ¶ 26.

Further, on November 24, 2021, Defendant "informed [Plaintiff] that it had received invoices from EquipmentShare, a third-party vendor that provided chilling equipment which was being used to construct the two cleanrooms." *Id.* ¶ 27. The total amount due on the invoices was $79,734.28. *Id.* ¶ 28. Despite Plaintiff telling Defendant that Plaintiff would

pay EquipmentShare directly, Defendant submitted the invoices to Plaintiff. *See id.* ¶¶ 29-30. Plaintiff paid Defendant for the full amount of the invoices (the "Erroneous Reimbursement"). *Id.* ¶ 31. When EquipmentShare submitted the same invoices to Plaintiff, Plaintiff also paid EquipmentShare. *Id.* ¶¶ 32-33. When Plaintiff realized its mistake, it asked Defendant to return the Erroneous Reimbursement. *Id.* ¶ 34. Defendant initially told Plaintiff that it had transferred the money to EquipmentShare. *Id.* ¶ 35. Months later, Defendant claimed that the Credit-Card Charges and the Erroneous Reimbursement "resulted from valid project costs associated with the Timonium Contract." *Id.* ¶ 40. Defendant has not returned this money to Plaintiff. *See id.* ¶¶ 37, 39.

On May 21, 2022, Plaintiff sent Defendant a Notice of Breach and Reservation of Rights. *Id.* ¶ 41. Defendant acknowledged receipt two days later. *Id.* ¶ 43. Plaintiff initiated this lawsuit on March 10, 2023. *See generally id.* Defendant filed its partial motion to dismiss and its motion to strike on May 12, 2023. Dismiss Br.; Strike Br. Plaintiff filed its oppositions to both motions on May 25, 2023. Dismiss Opp.; Strike Opp. Defendant did not submit a reply brief in support of either of its motions.

## LEGAL STANDARD

"[F]ederal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996); *accord Sarkees v. E.I. Dupont De Nemours & Co.*, 15 F.4th 584, 588 (2d Cir. 2021). The parties agree that New York provides the applicable state substantive law. *See* Dismiss Br. at 4; Strike Opp. at 4.

With respect to procedure, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Buon v. Spindler*, 65 F.4th 64, 76 (2d

4

Cir. 2023). The Court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the plaintiff. *See Grullon*, 720 F.3d at 139. Still, a complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and more than "facts that are 'merely consistent with' a defendant's liability." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Determining whether a complaint states a claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. In making this decision, a court generally is limited to the "facts stated on the face of the complaint," "documents appended to the complaint or incorporated in the complaint by reference," "matters of which judicial notice may be taken," and documents that are otherwise "integral" to the complaint. *Goel*, 820 F.3d at 559 (citations omitted).

"When a jury trial has been demanded under Rule 38," a jury trial must be held "on all issues so demanded . . . unless: (1) the parties or their attorneys file a stipulation to a nonjury trial or so stipulate on the record; or (2) the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a). "[T]he party seeking to enforce the jury waiver clause bears the burden of showing that the waiver was knowing and voluntary." *Kortright Cap. Partners LP v. Investcorp Inv. Advisers Ltd.*, 327 F. Supp. 3d 673, 685 (S.D.N.Y. 2018).

## DISCUSSION

### I. Partial Motion to Dismiss

Defendant moves to dismiss Plaintiff's claims for negligent misrepresentation, breach of the implied covenant of good faith and fair dealing, and unjust enrichment. *See generally*

Dismiss Br.  The Court will address each claim in turn.  Defendant does not move to dismiss Plaintiff's breach-of-contract claim.

### a. Negligent Misrepresentation

Under New York law, "a claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 944 N.E.2d 1104, 1109 (N.Y. 2011) (brackets omitted) (quoting *J.A.O. Acquisition Corp. v. Stavitsky*, 863 N.E.2d 585, 587 (N.Y. 2007)).  Defendant argues that Plaintiff's negligent-misrepresentation claim should be dismissed for two reasons: (1) the claim is duplicative of Plaintiff's breach-of-contract claim; and (2) Plaintiff fails to plead facts and elements necessary to meet Rule 9(b)'s heightened pleading standard.  *See* Dismiss Br. at 4-7.  The Court agrees that the claim, as pleaded, is duplicative of Plaintiff's breach-of-contract claim.

"A simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated," and where the "plaintiff is essentially seeking enforcement of the bargain, the action should proceed under a contract theory."  *IKB Int'l, S.A. v. Wells Fargo Bank, N.A.*, --- N.E.3d ----, 2023 WL 4002324, at *6 (N.Y. June 15, 2023) (brackets omitted) (quoting *Dormitory Auth. v. Samson Constr. Co.*, 94 N.E.3d 456, 460-61 (N.Y. 2018)).  In particular, a misrepresentation claim may not be "based solely upon a mere failure to perform promises of future acts.  A failure so to perform is merely a breach of contract, which must be enforced by an action on that contract."  *Niagara Falls Water Bd. v. City of Niagara Falls*, 881 N.Y.S.2d 763, 765 (4th Dep't 2009) (citation omitted); *accord Michael Davis Constr., Inc. v. 129 Parsonage Lane, LLC*, 149 N.Y.S.3d 118, 122 (2d Dep't 2021) ("When both are alleged, a negligent misrepresentation claim will be found to be

duplicative of a breach of contract claim where the pleading fails to allege facts that would give rise to a duty that is independent from the parties' contractual obligations."). Thus, a court may dismiss a negligent-misrepresentation claim that duplicates a breach-of-contract claim. *See, e.g.*, *Soames v. 2LS Consulting Eng'g, D.P.C.*, 133 N.Y.S.3d 559, 561 (1st Dep't 2020); *TJJK Props., LLC v. A.E.Y. Eng'g, D.P.C.*, 130 N.Y.S.3d 168, 170 (4th Dep't 2020).

The sole misrepresentation identified in the Complaint is that "[Defendant] represented to [Plaintiff] that it was able to design, procure materials for, and construct 'one clean non-classified cleanroom (CNC) and one ISO7 certified cleanroom within [Plaintiff's plant]' pursuant to [Plaintiff's] guidelines, specifications, and requirements." Compl. ¶ 45 (quoting SOW § 1.2). But this was merely a representation that Defendant would perform under the contract. Plaintiff's negligent-misrepresentation claim "essentially seek[s] enforcement of the bargain" struck in the Timonium Contract, *IKB Int'l*, 2023 WL 4002324, at *6 (citation omitted), so it is "duplicative of [Plaintiff's] breach of contract claim," *Michael Davis Constr.*, 149 N.Y.S.3d at 122, and the Court will dismiss it, *see, e.g.*, *320 W. 115 Realty LLC v. All Bldg. Constr. Corp.*, 149 N.Y.S.3d 28, 29 (1st Dep't 2021) ("[A] a cause of action for breach of contract cannot be converted into one for fraud by merely alleging that defendant did not intend to fulfill the contract." (quotation marks and citation omitted)).

*Board of Managers of Soho North 267 West 124th Street Condominium v. NW 124 LLC*, No. 650488/2012, 2012 WL 6211660 (N.Y. Sup. Ct. Dec. 6, 2012) ("*Soho North I*"), *aff'd*, 984 N.Y.S.2d 17 (1st Dep't 2014) ("*Soho North II*"), is instructive. There, the plaintiffs (who owned residential units in a condominium) alleged that the defendants had "defectively designed and constructed the renovation to the building, resulting in unsafe and defective conditions," including mechanical failures and a faulty HVAC system. *Soho North I*, 2012 WL 6211660, at *1. The plaintiffs brought several claims, including breach of contract and

negligent misrepresentation. *See id.* The latter was based on the defendants having "represented that they intended to build and complete the Condominium in accordance with the building plans and specifications, and all applicable codes, filed plans and specifications, and locally accepted building practices for items not covered by the codes." *Id.* at *2. The trial court dismissed the negligent-misrepresentation claim, explaining that "the alleged misrepresentations are not collateral to the contract. They pertain to the exact allegations found in plaintiffs' breach of contract claim, namely, that the work performed was substandard and not in accordance with the terms of the contract. To that extent, this cause of action is duplicative of the first cause of action for breach of contract." *Id.* at *9. The First Department affirmed, stressing that a "claim for negligent misrepresentation is not separate from a breach of contract claim where the plaintiff fails to allege a breach of any duty independent from contractual obligations." *Soho North II*, 984 N.Y.S.2d at 18; *see also, e.g.*, *Michael Davis Constr.*, 149 N.Y.S.3d at 121-22 (similar facts and holding); *Bd. of Managers of Beacon Tower Condo. v. 85 Adams St., LLC*, 25 N.Y.S.3d 233, 237, 239 (2d Dep't 2016) (similar facts and holding).

As presently pleaded, Plaintiff's negligent-misrepresentation claim is akin to the claim dismissed in *Soho North*. As in *Soho North*, Plaintiff alleges that Defendant failed to "build and complete the [cleanrooms] in accordance with the building plans and specifications." *Soho North I*, 2012 WL 6211660, at *2; *cf.* Compl. ¶ 45 ("[Defendant] represented to [Plaintiff] that it was able to design, procure materials for, and construct [two cleanrooms] pursuant to [Plaintiff's] guidelines, specifications, and requirements."). Also, as in *Soho North*, the Complaint does not "allege a breach of any duty independent from contractual obligations." *Soho North II*, 984 N.Y.S.2d at 18. Hence, Plaintiff's negligent-

8

misrepresentation claim is "duplicative of the breach of contract claim and d[oes] not state a cause of action." *Id.* at 19.

Plaintiff points to Section 3.1 of the MSA to argue that Defendant owed Plaintiff a duty to disclose based on its superior knowledge. *See* Dismiss Opp. at 5. Plaintiff's invocation of Section 3.1 in its brief – but nowhere in its Complaint – cannot salvage its claim because a plaintiff "cannot amend [its] complaint by asserting new facts or theories for the first time in opposition to [the defendant's] motion to dismiss." *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719, 732 (S.D.N.Y. 2021) (quoting *K.D. ex rel. Duncan v. White Plains Sch. Dist.*, 921 F. Supp. 2d 197, 209 n.8 (S.D.N.Y. 2013)); *accord Fadem v. Ford Motor Co.*, 352 F. Supp. 2d 501, 516 (S.D.N.Y. 2005) ("It is long-standing precedent in this circuit that parties cannot amend their pleadings through issues raised solely in their briefs."). Even if the Court were to consider Section 3.1 of the MSA (since it was appended to the Complaint, *see Goel*, 820 F.3d at 559), this representation in the Timonium Contract does not create a special relationship sufficient to support a negligent-misrepresentation claim separate and apart from its breach-of-contract claim. Section 3.1 states simply that Plaintiff "is at all times relying on [Defendant's] knowledge and skill and on [Defendant's] representations and warranties." MSA § 3.1. Everyone who contracts for the services of another relies on the knowledge and skill of their counterparty in performing that contract, whether there is an express representation to that effect or not. Plaintiff has provided no authority that reliance on Defendant's skill and expertise, coupled with a reference to Defendant's contractual representations and warranties, creates a special relationship supporting a negligent-misrepresentation claim that can stand independently of a breach-of-contract claim. And "[i]f the only interest at stake is that of holding the defendant to a promise, . . . the plaintiff may not

transmogrify the contract claim into one for tort." *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 899 (2d Cir. 1980).

Presumably recognizing that its claim is deficient as pleaded, Plaintiff argues in its brief that its negligent-misrepresentation claim should be not dismissed as duplicative because of Defendant's statements regarding the Credit-Card Charges and the Erroneous Reimbursement, which (Plaintiff says) were actionable "misrepresentations of present facts made post-contract formation" that were "collateral or extraneous" to the Timonium Contract." Dismiss Opp. at 6 (quotation marks and citation omitted). Plaintiff relies on allegations that it did not plead in its Complaint to support its negligent-misrepresentation claim. *See* Compl. ¶¶ 44-49 (asserting a negligent-misrepresentation claim that makes no mention of the Credit-Card Charges or the Erroneous Reimbursement). A "party may not use an opposition to a dispositive motion as a means to amend the complaint," so Plaintiff's late-blooming references to the Credit-Card Charges and the Erroneous Reimbursement cannot salvage its negligent-misrepresentation claim. *Flowers v. Conn. Light & Power Co.*, 774 F. App'x 33, 36 (2d Cir. 2019) (summary order).

Finally, Plaintiff says that it "seeks special damages that are not recoverable as contract damages," and that this means that Plaintiff's negligent-misrepresentation claim is not duplicative. Dismiss Opp. at 6. The Court is not persuaded. Plaintiff asserts in its brief that it "seeks special damages for the [Credit-Card Charges and the Erroneous Reimbursement], totaling $1,124,734.28." *Id.* But that figure appears only in the unjust-enrichment portion of the Complaint. Compl. ¶ 70. Meanwhile, the negligent-misrepresentation portion of the Complaint alleges that Plaintiff "suffered damages in an amount to be proven at trial, but in no event less than $2,650,000.00." *Id.* ¶ 49. Once again, Plaintiff's brief does not match Plaintiff's pleading.

For these reasons, the negligent-misrepresentation claim is dismissed.

### b. Breach of the Implied Covenant of Good Faith and Fair Dealing

"It is well settled that 'in New York, all contracts imply a covenant of good faith and fair dealing in the course of performance.'" *Singh v. City of New York*, 217 N.E.3d 1, 5 (N.Y. 2023) (brackets omitted) (quoting *511 W. 232nd Owners Corp. v. Jennifer Realty Co.*, 773 N.E.2d 496, 500 (N.Y. 2002)). "Broadly stated, the implied covenant embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Id.* (quotation marks and citation omitted). New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Quintanilla v. WW Int'l, Inc.*, 541 F. Supp. 3d 331, 352 (S.D.N.Y. 2021) (quoting *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002)). Therefore, a "claim for violation of the covenant survives a motion to dismiss only if it is based on allegations different from those underlying the breach of contract claim, and the relief sought is not intrinsically tied to the damages that flow from the breach of contract." *JN Contemp. Art LLC v. Phillips Auctioneers LLC*, 29 F.4th 118, 128 (2d Cir. 2022); *accord Cruz v. FXDirectDealer, LLC*, 720 F.3d 115, 125 (2d Cir. 2013); *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 434 n.17 (2d Cir. 2011).

Plaintiff's breach-of-implied-covenant claim alleges that Defendant "executed the Timonium Contract with no intent to comply with any of the terms thereof, as evidenced by its refusal to satisfy its contractual obligations under the Timonium Contract, specifically the design, procurement of materials, and construction of two cleanrooms," Compl. ¶ 61; and that Defendant "failed to exercise good faith and to deal fairly with [Plaintiff] in fulfilling the terms and promises contemplated by the Timonium Contract and, instead, exercised bad faith

11

and actions designed to damage [Plaintiff]," *id.* ¶ 62. Plaintiff does not allege anything other than that Defendant, albeit unfairly and in bad faith, did not fulfill the terms and promises of the contract between them, with no other factual allegations regarding anything other than the failure to comply with the contract. Plaintiff's breach-of-implied-covenant claim, as currently pleaded, clearly is not "based on allegations different from those underlying the breach of contract claim." *JN Contemp. Art*, 29 F.4th at 128. Accordingly, the breach-of-implied-covenant claim is duplicative.

Plaintiff insists that it is "entitled to plead alternative theories of liability." Dismiss Opp. at 2 (capitalization omitted); *see* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient."); Fed. R. Civ. P. 8(d)(3) ("A party may state as many separate claims or defenses as it has, regardless of consistency.").[1] The Court acknowledges that, ordinarily, a plaintiff may "plead two or more statements of a claim, even within the same count, regardless of consistency." *Henry v. Daytop Vill., Inc.*, 42 F.3d 89, 95 (2d Cir. 1994) (allowing the plaintiff to plead alternative claims in civil-rights case). Further, the anti-duplication rule described in cases like *JN Contemporary Art* "does not preclude a party from bringing a claim for breach of the implied covenant of good faith and fair dealing alongside a claim for express breach of contract when those claims are brought in the alternative." *Sorotzkin v. EmblemHealth, Inc.*, No. 22-3194, 2023 WL 7130644, at *2 (2d Cir. Oct. 30, 2023) (summary order) (quotation marks and citation omitted). "That is because under the

---

[1] In its brief, Plaintiff invokes "Rule 8(e)(2)." Dismiss Opp. at 2-3. Rule 8(e)(2) no longer exists, but its substance has been retained in Rule 8(d). *See* H.R. Doc. No. 110-27, at 440 (2007), https://www.govinfo.gov/content/pkg/CDOC-110hdoc27/pdf/CDOC-110hdoc27.pdf [https://perma.cc/933T-P6V7].

rule a party is only precluded from *recovering* on both theories at the same time." *Id.* (brackets, quotation marks, and citation omitted; emphasis added). Unlike the plaintiff in *Sorotzkin*, however, Plaintiff here did not expressly plead its breach-of-implied covenant claim in the alternative to its breach-of-contract claim. *Compare id.* ("Sorotzkin brought the claims in the alternative, arguing that the reimbursement rate breached the express terms of the contract or, if it did not breach the express terms, breached the implied covenant."), *with* Compl.

Even if Plaintiff had brought these claims in the alternative, the breach-of-implied-covenant claim would still be deficient because, as stated previously, the only allegations of a breach of the implied covenant directly overlap with the breach-of-contract claim: Defendant did not intend to perform under the contract, *see* Compl. ¶ 61, and did not "fulfill[] the terms and promises contemplated by the Timonium Contract," *id.* ¶ 62. As noted, however, New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled." *Quintanilla*, 541 F. Supp. 3d at 352 (citation omitted); *see also Negrete v. Citibank, N.A.*, 187 F. Supp. 3d 454, 470 (S.D.N.Y. 2016) (dismissing breach-of-implied-covenant claim as duplicative where it "relie[d] on no facts distinct from" the facts underlying the breach-of-contract claim). Thus, this case more closely resembles *JN Contemporary Art* and *Cruz*, both of which dismissed breach-of-implied-covenant claims as duplicative.[2]

---

[2] Plaintiff cites three cases which, it says, show that its breach-of-implied-covenant claim is "wholly distinct from" its breach-of-contract claim. Dismiss Opp. at 9 (citing *Hamlen v. Gateway Energy Servs. Corp.*, No. 16-cv-03526 (VB), 2017 WL 892399, at *5 (S.D.N.Y. Mar. 6, 2017); *Claridge v. N. Am. Power & Gas, LLC*, No. 15-cv-01261 (PKC), 2015 WL 5155934, at *6 (S.D.N.Y. Sept. 2, 2015); *E*Trade Fin. Corp. v. Deutsche Bank AG*, No. 05-cv-00902 (RWS), 2008 WL 2428225, at *26 (S.D.N.Y. June 13, 2008)). None of those decisions is on point. In *Hamlen* and *Claridge*, the breach-of-implied-covenant theory was that the defendant had acted in bad faith in exercising its discretion under the contract. *See*

Again, perhaps recognizing that its claim is deficient as pleaded, Plaintiff insists that its "respective allegations in support of the [breach-of-contract and breach-of-implied-covenant] claims are distinct" because its "breach of contract claim relies upon the Timonium Contract," whereas its "claim for breach of the implied covenant of good faith and fair dealing relies upon the [Credit-Card Charges and the Erroneous Reimbursement]." Dismiss Opp. at 9. Yet, just as with Plaintiff's negligent-representation claim, the portion of the Complaint setting forth Plaintiff's breach-of-implied-covenant claim makes no mention of the Credit-Card Charges or the Erroneous Reimbursement, *see* Compl. ¶¶ 59-64, and "a party may not use an opposition to a dispositive motion as a means to amend the complaint," *Flowers*, 774 F. App'x at 36; *accord Roberts*, 518 F. Supp. 3d at 732. The Court therefore dismisses Plaintiff's breach-of-implied-covenant claim.

   c. **Unjust Enrichment**

Plaintiff's unjust-enrichment claim focuses on recovering the Credit-Card Charges and the Erroneous Reimbursement. *See* Compl. ¶¶ 65-70. Defendant contends that Plaintiff's unjust-enrichment claim is duplicative of Plaintiff's breach-of-contract claim and requests dismissal of the unjust-enrichment claim. *See* Dismiss Br. at 10-11. The Court agrees with Plaintiff that it has stated a non-duplicative claim of unjust enrichment.

---

*Hamlen*, 2017 WL 892399, at *5; *Claridge*, 2015 WL 5155934, at *6. There is no discretionary standard to evaluate in the present case, and Plaintiff instead asserts that Defendant has acted in bad faith by simply breaching the contract. *See* Compl. ¶ 61 ("Cleanspace executed the Timonium Contract with no intent to comply with any of the terms thereof, as evidenced by its refusal to satisfy its contractual obligations under the Timonium Contract, specifically the design, procurement of materials, and construction of two cleanrooms."). Meanwhile, the *E*Trade* court declined to dismiss, on summary judgment, the plaintiff's breach-of-implied-covenant claim because of unresolved issues of fact. *See* 2008 WL 2428225, at *26. Plaintiff points to no comparable ambiguity in the contract's terms that would warrant a similar result here.

14

"To recover under a theory of unjust enrichment, a litigant must show that (1) the other party was enriched, (2) at that party's expense, and (3) that it is against equity and good conscience to permit the other party to retain what is sought to be recovered." *Columbia Mem'l Hosp. v. Hinds*, 192 N.E.3d 1128, 1137 (N.Y. 2022) (brackets, quotation marks, and citation omitted). Because an unjust-enrichment claim "is not available where it simply duplicates, or replaces, a conventional contract or tort claim," *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012), courts may dismiss duplicative unjust-enrichment claims at the pleading stage, *see, e.g.*, *Yookel, Inc. v. U.S. Steel Corp.*, No. 22-655, 2023 WL 3033512, at *2 (2d Cir. Apr. 21, 2023) (summary order); *Hoffmann v. Kashi Sales, L.L.C.*, 646 F. Supp. 3d 550, 564 (S.D.N.Y. 2022); *Shane Campbell Gallery, Inc. v. Frieze Events, Inc.*, 441 F. Supp. 3d 1, 6 (S.D.N.Y. 2020). But "[w]here the contract does not clearly address the subject of the dispute, its existence will not bar a claim" of unjust enrichment. *Frio Energy Partners, LLC v. Fin. Tech. Leverage, LLC*, --- F. Supp. 3d ----, 2023 WL 4211035, at *8 (S.D.N.Y. June 27, 2023).

Plaintiff alleges that the Credit-Card Charges and the Erroneous Reimbursement unjustly enriched Defendant at Plaintiff's expense. *See* Compl. ¶¶ 65-70; Dismiss Opp. at 10. Both incidents may support recovery under well-recognized theories of unjust enrichment. The Credit-Card Charges involve the alleged misappropriation of Plaintiff's money that Plaintiff alleges is unrelated to the Timonium Contract. *See* Compl. ¶¶ 22-26. "A person who obtains a benefit by misappropriating financial assets, or in consequence of their misappropriation by another, is liable in restitution to the victim of the wrong." Restatement (Third) of Restitution and Unjust Enrichment § 41 (Am. L. Inst. 2011). The Erroneous Reimbursement involves the mistaken payment of money not due under the contract. "Payment by mistake gives the payor a claim in restitution against the recipient to the extent

15

payment was not due." *Id.* § 6; *see Citibank, N.A. v. Brigade Cap. Mgmt., LP*, 49 F.4th 42, 76 (2d Cir. 2022) ("New York's 'general rule' covering the receipt of mistaken payments . . . is that a party receiving money as the result of a mistake must return it." (quoting *Ball v. Shepard*, 95 N.E. 719, 721 (N.Y. 1911))); *Mfrs. Hanover Tr. Co. v. Chem. Bank*, 559 N.Y.S.2d 704, 707 (1st Dep't 1990) (this rule "applies even if the mistake is due to the negligence of the payor").

Defendant argues that "an unjust enrichment claim is duplicative of a breach of contract claim where the cause of action *stems from* the contractual relationship." Dismiss Br. at 10 (brackets, further emphasis, and citation omitted). This proposed standard – under which, presumably, no party to a contract could ever recover from the other party in restitution – is contrary to established law. True, "[w]here the parties [have] executed a valid and enforceable written contract governing a particular subject matter, recovery on a theory of unjust enrichment for events arising out of that subject matter is ordinarily precluded." *IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009); *accord Chesapeake Energy Corp. v. Bank of N.Y. Mellon Tr. Co.*, 837 F.3d 146, 150 (2d Cir. 2016) (per curiam) ("[W]here a valid and enforceable contract governs the relevant subject matter of the parties' dispute, the contract – rather than principles of restitution – should determine the measure of a party's recovery for events arising from that subject matter."). This result presupposes, however, that the contract covers the dispute. "In order for a contract to cover the dispute in issue and thus bar a plaintiff's [unjust-enrichment] claims, the contract must specifically address the actions that gave rise to the dispute. That is to say, the contract must clearly cover the dispute between the parties." *Frio Energy Partners*, 2023 WL 4211035, at *8 (original brackets, quotation marks, and citation omitted). "If . . . there is a bona fide dispute as to . . . whether the scope of an existing contract covers the disagreement between

16

the parties, a party will not be required to elect his or her remedies and may proceed on both [unjust-enrichment] and breach of contract theories." *Pauwels v. Deloitte LLP*, 83 F.4th 171, 188 (2d Cir. 2023) (quoting *M/A Com, Inc. v. New York*, 910 N.Y.S.2d 246, 247 (3d Dep't 2010)).

Defendant never explains how the Timonium Contract "clearly address[es] the subject of the dispute" – namely, the Credit-Card Charges and the Erroneous Reimbursement. *Frio Energy Partners*, 2023 WL 4211035, at *8. Defendant simply asserts that Plaintiff's unjust-enrichment claim is duplicative "because it stems from the parties' commercial relationship as established by the Timonium Contract." Dismiss Br. at 10. As just explained, though, the loose "stems from" standard advanced by Defendant is not the law. The fact that when Plaintiff "asked about the [Credit-Card Charges and the Erroneous Reimbursement], [Defendant] claimed that [they] resulted from valid project costs associated with the Timonium Contract," Compl. ¶ 40, does not alter the analysis. After all, Plaintiff disputes that these charges were authorized by the Timonium Contract – instead alleging that Defendant wrongly incurred credit-card charges and retained money that should have been reimbursed – and Defendant cites no provision of the Timonium Contract which "specifically address[es]" the subject matter of the parties' dispute. *Frio Energy Partners*, 2023 WL 4211035, at *8 (citation omitted). Moreover, the amount that Plaintiff seeks to recover on its unjust-enrichment claim ($1,124.734.28, which is the sum of the $1,045,000 Credit-Card Charges plus the $79,734.28 Erroneous Reimbursement, Compl. ¶¶ 25, 31, 70) is separate and distinct from what Plaintiff seeks to recover on its breach-of-contract claim ($3,070,000, which is the sum of the $2,650,000 that Plaintiff paid Defendant to build the cleanrooms plus the $420,000 that Plaintiff says it spent to mitigate the damages from the allegedly inoperable cleanrooms, *id.* ¶¶ 13, 21, 58).

The Court rejects Defendant's implication that Plaintiff's unjust-enrichment claim must be dismissed at the pleading stage simply because Defendant asserts, without any further explanation or justification, that the Timonium Contract authorized its actions. Even if later facts bear this out, a "court may allow a breach of contract and an unjust enrichment claim to proceed past the motion to dismiss stage when the validity or scope of the contract is difficult to determine." *Nat'l Convention Servs., L.L.C. v. Applied Underwriters Captive Risk Assurance Co.*, 239 F. Supp. 3d 761, 795 (S.D.N.Y. 2017). Thus, the Court denies Defendant's motion to dismiss Plaintiff's claim of unjust enrichment.

## II. Leave to Amend

Defendant asks the Court (without elaboration) to dismiss Plaintiffs' (non-breach-of-contract) claims with prejudice. *See* Dismiss Br. at 1, 11. In response, Plaintiff "respectfully requests leave to amend its complaint to cure any deficiencies identified by this Court," invoking "the Second Circuit's strong preference for resolving disputes on the merits." Dismiss Opp. at 11.

The Court grants Plaintiff's request for leave to amend. "In the ordinary course, the Federal Rules of Civil Procedure provide that courts 'should freely give leave' to amend a complaint 'when justice so requires.'" *Williams v. Citigroup Inc.*, 659 F.3d 208, 212 (2d Cir. 2011) (per curiam) (quoting Fed. R. Civ. P. 15(a)(2)). "This permissive standard is consistent with [the] 'strong preference for resolving disputes on the merits,'" *id.* at 212-13 (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)), and this action is at a relatively early stage.

Plaintiff may well not decide to amend given that its breach-of-contract and unjust-enrichment claims remain, but leave is granted in the event that Plaintiff can, and wishes to, replead its negligent-misrepresentation and breach-of-implied-covenant claims in a manner

that does not duplicate its breach-of-contract claim. If the amended negligent-misrepresentation claim sounds in fraud (as suggested in Plaintiff's brief, *see* Dismiss Opp. at 6), Plaintiff is expected to plead with the particularity required by Rule 9(b), *see Kitchen Winners NY Inc. v. Rock Fintek LLC*, --- F. Supp. 3d ----, 2023 WL 2746031, at *19 (S.D.N.Y. Mar. 31, 2023) (there is a "split of authority as to whether negligent representation claims are subject to Rule 9(b)," but even those courts that "have expressed uncertainty as to whether the 9(b) heightened pleading standard applies in all instances [have found] the standard to apply where claims sound in fraud" (quotation marks and citation omitted)). Plaintiff also is expected to comply with the pertinent Local and Individual Rules, including the requirement that "[a]ny amended or corrected filing shall be filed with a redline showing all differences between the original and revised filing." Rochon Indiv. R. 1(I).

### III. Motion to Strike Jury Demand

Defendant also moves to strike Plaintiff's jury demand based on the Timonium Contract's jury-waiver clause. *See generally* Strike Br. Plaintiff opposes this motion, arguing that several of its claims do not fall under the jury waiver. *See* Strike Opp. at 3-5.

Since Plaintiff has been granted leave to replead, it is more efficient for the Court to consider the present motion to strike in the context of the operative complaint. Thus, the Court denies without prejudice Defendant's motion to strike. Defendant may submit a new motion to strike once Plaintiff has elected either to file an amended complaint or stand on the original complaint. *See Chen v. Hunan Manor Enter., Inc.*, 340 F.R.D. 85, 89 (S.D.N.Y. 2022) ("A court has the discretion to permit a motion to strike a jury demand at any time, even on the eve of trial." (brackets and citation omitted)).

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED as to Counts I and III and DENIED as to Count IV. Plaintiff's request for leave to file an amended complaint is GRANTED. Plaintiff shall file an amended complaint, if any, within 14 days after this decision issues. Defendant's motion to strike Plaintiff's jury demand is DENIED without prejudice. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 19 and 21.

Dated: November 9, 2023
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge